RAYMOND, APPELLANT, *v.* WIMSETTE, RESPONDENT.

[Argued June 13, 1892.   Decided November 28, 1892.]

PLEADING—*Demurrer*—*Review on appeal.*—Error alleged in overruling a demurrer to an answer will not be reviewed on appeal where the plaintiff has filed a replication after demurrer overruled, and the answer is defective only in form of denial, or in such matter as could be cured by verdict. (*Bohm* v. *Dunphy*, 1 Mont. 340, cited.)

WATER RIGHTS—*Pleading.*—In an action to determine the priority of water rights, and to obtain an injunction restraining defendant from diverting the waters of a creek, an answer which pleads in effect that the creek in question is

not a running stream during the irrigating season, and that during such season none of the waters flowing into said creek at defendant's ranch could, in the course of its natural flow, reach plaintiff's ranch fifteen miles below, states a good defense.

SAME — *Finding — Sufficiency of evidence.* — In such case a finding that defendant, though a junior appropriator, was entitled to the use of certain waters of the creek in question which would not, if allowed to remain in the creek, reach plaintiff's point of diversion during the irrigating season, is amply supported by evidence that said creek did not constitute a running stream, but that the waters thereof during the irrigating season of each year sank into the ground at a point three miles below defendant's ranch, and from that point to a point one mile below plaintiff's ranch, a distance of fifteen miles, the channel of the creek was dry in places, and no water flowed therein.

SAME — *Rights of prior and junior appropriators where waters sink.* — A prior appropriator may insist that the water remain in the stream from which he has the right of prior appropriation, only so long as any useful quantity thereof would reach his point of diversion, and where it is shown by the experience of many years that the water used by a junior appropriator for a beneficial purpose would, if not so used, sink before reaching the point of diversion of the prior appropriator, the latter is not merely by reason of his prior claim entitled to an injunction to compel the junior appropriator to allow the water to remain in the stream.

*Appeal from Fifth Judicial District, Madison County.*

Action to determine priority of water rights, and for an injunction. The cause was tried before GALBRAITH, J. Affirmed.

Statement of facts, prepared by the judge delivering the opinion.

By this action plaintiff Raymond sought to obtain a decree establishing his right to the prior use of all the water of Sweetwater Creek, in Madison County, as against defendant Wimsette; and also to obtain a perpetual injunction restraining defendant from diverting and using any of the water of said creek.

On the commencement of the action, a preliminary injunction was granted, requiring defendant to refrain from diverting and using any of the water of said creek; but on the trial of the action the court found defendant entitled to forty-five inches thereof, prior to the rights of plaintiff therein; and also found plaintiff entitled to a large quantity of the water of said creek, to wit, nine hundred and sixteen inches, by various appropriations made in the years 1873, 1874, 1881, 1883, and 1884; and rendered judgment accordingly, with decree enjoining each of the parties from interfering with the rights of the other, as established by said judgment, and ordering that the costs of the

action be paid in equal proportions by each of the respective parties. Plaintiff moved for a new trial, which was denied, by order of the court, and thereupon plaintiff appealed from that order, and from the judgment.

The first proposition urged by appellant is that defendant's answer fails to state facts sufficient to constitute a defense; and this assignment will require a consideration of the allegations of the complaint and the answer.

The complaint contains averments usual in such cases, in substance as follows: That plaintiff is the owner and in possession of certain tracts of land, particularly described as situate in Madison County, State of Montana, which several tracts of land aggregate altogether thirteen hundred and sixty acres; that the same is agricultural land in character, dry and arid, but valuable for the production of grain, grasses, and vegetables, which can be grown thereon and matured with the aid of artificial irrigation, and not otherwise; that said land lies along on either side of a certain stream of water known as "Sweetwater Creek;" that in order to make said land productive, as aforesaid, plaintiff and his predecessors in interest, at certain stated dates, appropriated certain stated quantities of the waters of said creek, and diverted the same upon said land, by the construction of irrigating ditches, all of which are described, and are alleged to have the capacity altogether of carrying sixteen hundred inches of water; that said creek contains at certain seasons one thousand inches of water, but in dry seasons it has not more than one hundred to two hundred inches at the point where plaintiff's first ditch taps said creek; that plaintiff has enjoyed the uninterrupted use of the waters of said creek, since the times of appropriating the various quantities thereof, as alleged, to irrigate his said land, until the interruption of defendant, by his wrongful taking and diversion of a large quantity of said water, as alleged; that all the water of said creek is necessary for the irrigation of plaintiff's land, all of which the plaintiff and his predecessors in interest actually appropriated, and diverted and used the same, in the years 1873 and 1874, by the means and for the purposes aforesaid; that about the 15th of May, 1889, defendant wrongfully, and without plaintiff's consent, diverted one hundred inches of the

waters of said stream, to which plaintiff was entitled, and
that on or about the 20th of May, 1890, defendant, without
consent of plaintiff, and wrongfully, diverted about two hun-
dred inches of the waters of said stream, thereby depriving
plaintiff of his right to the use of said water, as aforesaid; that
defendant threatens to continue the diversion and use of said
water, and to deprive the plaintiff thereof, thereby rendering
valueless the land of plaintiff, and causing irreparable injury
to plaintiff's rights; upon the statement of which facts plaint-
iff demanded the judgment mentioned above.

The answer of defendant to the allegations of plaintiff's
complaint is, in substance, as follows: Defendant denies, on
information and belief, that plaintiff is the owner of the land
described in his complaint; "admits that plaintiff has at times
used certain of the waters that have flowed down what is known
as 'Sweetwater Creek' to plaintiff's said claims, but denies that
there is any such stream known or called 'Sweetwater Creek,'
which has a regular or continuous flow from the lands of
defendant, hereinafter described, down through or upon the
lands claimed by plaintiff in his complaint;" denies that there
can be annually grown or harvested upon the land of plaintiff
crops of grain, vegetables, and grasses; admits that the said
lands claimed by plaintiff are dry and arid, and will not pro-
duce the crops aforesaid, without irrigation; "denies that
defendant has prevented plaintiff from using and enjoying the
full benefit and uninterrupted use of the waters of said Sweet-
water Creek, to which plaintiff is, or has been, in any wise
entitled; denies that the plaintiff is, or that his predecessors in
interest ever were, the owner or owners of all waters of said
stream, or of any interest therein exceeding two hundred inches
thereof;" denies that plaintiff, or his predecessors in interest,
have ever "appropriated or used all or any of the waters of
said stream which have been appropriated or used by this de-
fendant; denies that plaintiff, or his predecessors in interest,
in the year 1873 or 1874, or at any other time, "appropriated
all of the water of said stream for agricultural purposes or other-
wise; and further denies that plaintiff has used or enjoyed the
uninterrupted usufructuary right of the waters of said creek (so
called) upon the lands of plaintiff."

"And for a further defense herein defendant expressly avers that one of his predecessors in interest, to wit, one Samuel Weightman, in the year 1881, settled upon the premises now possessed and claimed by defendant, to wit, about one hundred and sixty acres of land, and during said year constructed an irrigating ditch, for the purpose of raising grain, grass, and other agricultural products on said land;" that by "means of said ditch there was, at the date aforesaid, appropriated by said Weightman, as aforesaid, near the headwaters of said Sweetwater Creek, about one hundred inches of water, measured according to the law of the State of Montana, passed by the fourteenth legislative assembly, approved March 12, 1885, and that defendant was, at the commencement of this suit, and now is, the owner of said Weightman Ditch, and is entitled to the use of the waters thereof;" "that defendant, through the original appropriation of said water by Weightman, as aforesaid, and his predecessors in interest, has continuously used and enjoyed the benefit thereof, from year to year, until the injunction served by the plaintiff against the defendant herein;" "that the lands possessed and claimed by defendant, as aforesaid, are chiefly dry and arid lands, and it is necessary to water the same by means of artificial irrigation, to grow thereon grains, grasses, and other vegetation; that said lands are valuable for agricultural purposes, but for no other purposes; that, during the fall of the year 1889, defendant, in order to utilize the waters of certain springs that did not flow into or form a part of said so-called Sweetwater Creek, constructed three certain ditches, and appropriated the waters of said springs, and also thereby increased the volume of said creek about twenty-five inches of water;" "that during the spring of 1890, about the month of April, defendant constructed a certain reservoir to catch the waters of certain springs on the mountain side, which said waters did not constitute any part of said Sweetwater Creek, and defendant alleges that the said twenty-five inches of water, appropriated from said springs, and also from said spring secondly above mentioned, and said reservoir, by reasons of such appropriations and improvement, belong to him as his sole and undivided property, separate and independent of any claim whatsoever of said plaintiff, and form no

part of the natural flow of said Sweetwater Creek." "Defendant further alleges that his possessions of land and water are situate up said Sweetwater Creek, above where plaintiff claims to have appropriated waters thereof, a distance, as the channel of said stream runs, of about fifteen miles; that said Sweetwater Creek is fed at all times between about the 1st of June each year, and until the fall months, when the snow comes, each year, by springs or rainfall only." Defendant denies "that said stream, from the premises of defendant to the points of the alleged appropriation of the waters of said stream by plaintiff, is a continuous stream; but, on the contrary, says that said Sweetwater Creek, from a point about three miles below the premises of defendant, during the dry seasons of each and every year, ceases to flow down the channel of said creek, but sinks into the ground, and is lost to sight, and no man knoweth whither it wendeth its way." Defendant further avers that during a period of twenty years last past, "from about the 1st of June of each year, and until the end of the irrigating season each year, said Sweetwater Creek has ceased to flow in the alleged channel thereof, as a continuously flowing stream; and that from a point about three miles below the premises owned by the defendant to a point about one mile below the land claimed or possessed by plaintiff, on said creek, covering a distance along the channel thereof of about fifteen miles, said creek has been and was, at places in its channel, entirely dry, and no water whatsoever flowed therein."

Plaintiff demurred to the answer on the ground that it failed to state facts sufficient to constitute a defense, and also that it was ambiguous and uncertain. Plaintiff also moved to strike out several portions of the answer. Both the demurrer and motion were overruled, and plaintiff filed a replication, traversing the new matter of defense set up in the answer, and on these pleadings the trial ensued, with the result above stated.

*Word, Smith & Word,* for Appellant.

*F. N. & S. H. McIntire,* for Respondent.

HARWOOD, J. — Appellant urges the order of the court, overruling his demurrer to respondent's answer, as error.

It would seem that, as a matter of practice, if the answer failed to state facts sufficient to constitute a defense, as to substantive matter, the objection raised by demurrer could be urged in the appellate court, even after replication was made and trial had. But if the answer was defective in form of denial or averment only, or the defects were such as could be cured by trial and verdict, the same would not be ground for reversal on appeal after replication and trial. In *Bohm* v. *Dunphy,* 1 Mont. 340, it is said in the opinion of the court: "Appellant claims that inasmuch as the plaintiff did not abide his demurrer to the answer, but filed a replication, his demurrer was thereby waived, and the issue of law thereby raised cannot be reviewed on this appeal. This would be true if the answer was defective only in form, or in such matter as could be cured by verdict."

We have set out, in the statement above, the complaint, in substance, and the answer almost entirely by quotation of its own terms, in order to bring these pleadings to view for the consideration of the objections raised thereto. In our opinion, the court committed no error in overruling the demurrer to defendant's answer. This answer traverses each allegation of the complaint, either by direct, positive denial, or by denial on information and belief. Therefore as to that portion of the answer the demurrer cannot be sustained. (Boone on Code Pleading, §§ 110–112.)

In addition to that part of the answer which traverses the allegations of the complaint, it set forth, as new matter of defense, that said Sweetwater Creek is not a running stream during the irrigating season, i. e., "from about the 1st of June each year until the ending of the irrigating season;" and that none of the waters flowing into said creek at defendant's ranch could, in the course of its natural flow, reach plaintiff's ranch, fifteen miles below. The facts alleged in relation to this condition of said creek during the season in question are set forth sufficiently; and in our judgment, if such facts could be established, the same is proper matter of defense in an action of this nature. We think the court ruled correctly in overruling the demurrer as to these allegations. This feature of the case will be further treated below in considering the sufficiency of evidence offered in support thereof. The answer also

sets up the fact that defendant has collected certain waters from springs, by means of ditches and reservoirs, which he alleges would not otherwise reach said creek, and used the same for the irrigation of his land. These allegations are not as certain as a pleading ought to be. It would seem from implication only that the waters so collected, or at least some portion thereof, are conducted into said Sweetwater Creek. That fact is not directly alleged, but it is asserted that defendant "also thereby increased the volume of said creek twenty-five inches of water." From one point of view, these allegations, as to the collection of water by defendant from entirely different sources than Sweetwater Creek, might be considered as irrelevant; but if the water so collected was turned into said creek, as implied by other averments, and then taken out by defendant, those allegations become relevant to the controversy, as showing the real source of the water, or a portion thereof, which defendant was diverting from said stream. As before observed, these allegations are not sufficiently certain, but there was no motion by plaintiff to require defendant to make his answer more definite in this respect. These defects, being of form — looseness of statement only — are such as would be cured by evidence and findings, and are not sufficient to reverse the cause on appeal.

Upon the other assignments there is more difficulty involved in arriving at a determination of them, but, on the whole consideration, we have arrived at the conclusion that the judgment and order appealed from ought to be affirmed.

There are two defenses set forth in the answer: (1) That none of the water of that branch of said creek on which defendant's ranch is situate, flowing therein at the point at which defendant diverts it, ever would or could reach plaintiff's ranch, in the natural course of its flow, during the irrigating season; (2) that defendant was entitled to the water which he diverted from said creek, by right of prior appropriation thereof by his predecessors in interest, to whose rights and interests he alleged he had succeeded. The court found both defenses established by the proof introduced, except that defendant had at times diverted some more than the forty-five inches of water from said creek, to which the court found him entitled; the amount of which

excess the court could not definitely find. Both of these find-ings are attacked by appellant on the ground of insufficiency of evidence to support either of them.

As to the first defense, in the order stated above — namely, that the waters of said creek, if allowed to remain therein, could not, in the course of its natural flow, reach plaintiff's place of diversion — several witnesses testified at the trial that this condition existed as to that branch of said creek on which defendant's ranch is located, and from which he diverted the water in controversy. These witnesses testified that defendant's ranch is located at or near the head of one of the branches of said creek; that said branch does not constitute a running stream during the irrigating season; that the water which flows therein at and above defendant's ranch, during that season, sinks and disappears a short distance below defendant's ranch, and a long distance above plaintiff's ranch; that in many places between said ranches, during said season, said creek, so called, is entirely dry, and is not a flowing stream. This testi-mony, according to the statement of said witnesses, was based upon many years of observation, and a thorough acquaintance with said creek.

It appears from reading the testimony that the trial court had ample evidence to support its finding that the waters of said creek, to the extent of forty-five inches, which defendant was charged with having unlawfully diverted, would not, if allowed to remain in the creek, reach plaintiff's ranch during the irrigating season. The effect of the testimony and finding on this point of the case appears to be that, when the waters of said branch diminish during the dry season to about forty-five inches, that amount of water is insufficient to carry the flow down said creek to plaintiff's place of diversion. The further effect of that finding is that when, from any cause, said creek contains a larger volume of water, which would carry its flow down to plaintiff's ranch, he would receive the benefit of all over and above forty-five inches, because defendant is prohibited by the decree from exhausting the volume thereof to any extent greater than forty-five inches; and the effect of the finding and decree appears also to be that if the volume is reduced by natural conditions to about forty-five inches of water, at defend-

ant's ranch, the prohibition upon defendant of diverting the same would be of no benefit whatever to plaintiff, because the same could not reach him by reason of natural conditions, which caused said waters to disappear before reaching plaintiff's point of diversion.

Appellant's counsel argue that if there are forty-five inches of water in said creek at defendant's ranch, and plaintiff had a prior right to the waters of said creek, he is entitled to an injunction to compel defendant to leave said water therein, peradventure one inch might reach plaintiff's irrigating ditch at a point fifteen miles below.

Under the theory of the law of this State relating to water rights, the prior appropriator may insist that the water remain in the stream, from which he has the right of prior appropriation, so long as any useful quantity thereof would reach his point of diversion, if allowed to remain. He is entitled to insist that all of such water remain, in order to carry the flow down to his point of diversion, although a large portion of it would be lost by evaporation and percolation. He has the right to the prior use of the water of the creek, and while he may be entitled to a stated quantity only, it may require much more than that quantity in the creek to carry the amount he is entitled to down to his point of diversion. While these propositions are undoubtedly true, according to the law of water rights prevailing in this State, it should be remembered that the right in question is not of that absolute character, in view of the law which pertains to the ownership of things. One of the primary facts upon which the water right is founded, and without which it cannot exist, is the power of the appropriator to utilize the water which he claims for some lawful and beneficiary purpose. Would it not, therefore, be unreasonable, and contrary to the theory of the law governing the subject under consideration, to hold that although experience of many years, and actual demonstration, confirm the proposition that none of the water in controversy could, if left in the stream, reach plaintiff's place of diversion, at a distant point below, still defendant should be restrained from the use thereof on the ground of plaintiff's prior claim to the water of said stream, at the place of his diversion? In our judgment, such holding

would be entirely contrary to the spirit, if not to the letter, of the law; and there is not, even in the letter of the law, anything tending to such a doctrine. But these observations should not be misconstrued or misapplied, so as to allow wrongful diversion or diminution of the waters of a stream, on the pretense that the water so diverted would be lost, unless it can be shown that by a long course of experience, and not as the occasional result of some unusually dry season, none of the waters in controversy would, if allowed to remain in the stream, reach the prior appropriator's point of diversion.

There are some difficulties apparent, and perhaps others, not at once apparent, in the problem under consideration. From certain points of view there may be some want of completeness in the findings of the court below, in determining the controversy. For instance, if, taking the state of facts as found, forty-five inches of water of said creek, flowing at defendant's ranch, would not reach plaintiff's point of diversion, still it would seem to be shown in effect, and admitted, that a greater volume of water would carry the flow down to plaintiff's ranch, fifteen miles below. What volume of water would be necessary to carry the flow down to plaintiff's ranch is not found, and cannot be ascertained from the evidence. If, however, for example, seventy-five inches of water flowing past defendant's ranch would carry twenty-five inches thereof to plaintiff, and defendant was allowed to take forty-five inches, it is apparent that, in effect, he would be taking away from plaintiff the twenty-five inches to which he was rightfully entitled, under the conditions stated. And probably, in such a case as we have here, more complete and exact justice would be arrived at by finding what volume of water was necessary in said creek, at defendant's ranch, to carry any useful quantity thereof to plaintiff, situated as these litigants are, and also providing in the decree that defendant could only take the water when the volume thereof was reduced so low that none of it would reach plaintiff's point of diversion; finding, of course, the quantity necessary to produce one or the other of these conditions. But a review of the record shows that no such findings were asked. Perhaps plaintiff and his counsel understood that such findings would be of no practical consequence, for, when the volume

of water rose sufficiently to flow down to plaintiff's point of
diversion, the supply may be sufficient for plaintiff, notwith-
standing defendant was allowed to take forty-five inches. It
may be from that practical view of the case no such findings
were desired.

The court further found "that, in the year 1884, one Samuel
Weightman had, by means of a ditch, diverted and appro-
priated and used, about forty-five statutory inches of the
waters of said creek, for the purpose of furnishing power to
operate a water wheel for mechanical purposes, to wit, churn-
ing; and that thereafter, in the year 1885, one David Stortvant,
and one Isaac Seyster, without objection from said Weightman,
or any other person, entered into peaceable and quiet possession
of said water wheel, ditch, and water right, and continued
in such possession until the year 1887, in which latter year
they, for a valuable consideration, voluntarily surrendered the
possession of said ditch, wheel, and the use of said water to
the defendant Wimsette, and that said Wimsette has been
continually in the possession thereof ever since, using said
water for agricultural, and other proper, useful, and beneficial
purposes."    "That the appropriation of water by Samuel
Weightman in the year 1884 was prior in point of time to
the appropriation of the plaintiff Raymond in the said year
1884."

Upon these findings the court stated its conclusion of law
that defendant is entitled to forty-five inches of the waters of
said creek, through said appropriation "by Samuel Weight-
man in the year 1884, and that said appropriation of Weight-
man was, and is, prior in point of time to the appropriation of
plaintiff, commenced in the fall of the year 1884, and that he
has the proper possessory right and title to land sufficient to
require said use."

There are several assignments of error as to the admission of
testimony on this branch of the defense, and it is also contended
that the evidence is insufficient to justify the findings and con-
clusion last above quoted.   In our view, however, it is unneces-
sary to consider those assignments, because the determination
of the court on the other branch of the case necessarily sustains
the decree.   By the decree the defendant is not allowed to take

more than forty-five inches of water from said creek under any conditions, or through any claim or right set up in the action.

The judgment and order appealed from will therefore be affirmed.

*Affirmed.*

DE WITT, J., concurs.

BLAKE, C. J., did not participate is this decision, being disqualified.