Argued February 4, affirmed March 24, 1925.

## ANNA MARTHA HILDEBRANDT · *v.* FANNIE MONTGOMERY AND HALSEY MONTGOMERY.

### (234 Pac. 267.)

**Waters and Watercourses—Water from Springs Subject to Appropriation.**

1. Water from springs of sufficient quantity to rise to the surface and to flow off in a definite channel with a tendency to regularity is subject to appropriation.

**Waters and Watercourses—"Watercourse" Defined.**

2. A watercourse is a stream of water, usually flowing in a particular direction, with well-defined banks and channels, but the water need not flow continuously, in fact the channel may be sometimes dry, so long as it to the casual glance bears unmistakable impress of the frequent action of running water, which has flowed through it from time immemorial.

**Waters and Watercourses—Source of Watercourse Immaterial.**

3. Source of watercourse is immaterial so long as supply is permanent, or at least periodical.

**Waters and Watercourses—Party Acquiring Public Land . Takes Subject to Vested Water Rights.**

4. Party acquiring public land containing springs furnishing water subject to appropriation takes subject to vested or accrued water rights, in view of Rev. Stats. U. S., Sections 2339, 2340 (U. S. Comp. Stats., §§ 4647, 4648).

---

1.  See 27 **R. C. L.** 1262.
2.  See 27 **R. C. L.** 1062.
3.  Necessity and sufficiency of source of supply to constitute watercourse, see note in 10 **Ann. Cas.** 1047. See, also, 27 **R. C. L.** 1065.
4.  See 27 **R. C. L.** 1260.

Waters and Watercourses—Prior Appropriation of Water from Springs Located on Public Domain Determines Rights to Water.

5. Prior appropriation of water from springs constituting watercourse, and located on public domain, determines rights to water despite Section 5797, Or. L.

See (1) 40 **Cyc.** 704.  (2) 40 **Cyc.** 554, 557.  (3) 40 **Cyc.** 554. (4) 40 **Cyc.** 706.  (5) 40 **Cyc.** 722.

From Josephine: F. M. CALKINS, Judge.

Department 2.

This is a suit to enjoin the diversion of water from certain perennial springs located on the southeast slope of Eight Dollar Mountain in Josephine County. The springs are at the head of a water basin between two low-lying parallel ridges extending in a southeasterly direction toward the land owned by the plaintiff. What are designated in the record as the group of large springs are in the southeasterly part of the NW. 1/4 of the NE. 1/4 of section 28, township 38 south, range 8 west, while the group of small springs are about 100 feet southwest from the large springs and in the northerly part of the SW. 1/4 of the NE. 1/4 of said section. Plaintiff claims that the water from these springs, if unobstructed, flows southeasterly in a well-defined watercourse across the northeast corner of the SW. 1/4 of the NE. 1/4 of section 28, and likewise continues through the SE. 1/4 of the NE. 1/4 of this section, until it reaches her farm of semi-arid land, consisting of 200 acres. It is asserted that she and her predecessors in interest appropriated the water from these springs in 1904, and since that time have had the free and uninterrupted use of the same for irrigation, stock, and domestic purposes, until 1912, when it is alleged the defendants diverted the water from its natural course by digging a ditch near the

springs and above plaintiff's point of diversion, thereby causing it to flow in a southerly direction to the land occupied by the defendant Fannie Montgomery. Plaintiff and her husband, now deceased, made strenuous objections to the use of this ditch at and since the time of its construction, and oftentimes dammed it up to prevent a diversion of water through it to the defendants' farm. Defendants, in 1921, constructed another ditch nearer the springs, and the controversy over the water rights involved herein increased until it finally culminated in this suit. It is the theory of the plaintiff that the water flowing from these springs constitutes a watercourse and for that reason was subject to appropriation, and that her rights thereto became vested long prior to the time defendants attempted to divert the water to their use. The large springs, from which it is estimated nine tenths of the water flows, are located on unoccupied land, being a part of the public domain. The small springs, at the time plaintiff and her predecessors in interest claim to have appropriated the water therefrom, were likewise on public land, and remained so until defendants occupied the same in 1907. In 1909, Wm. Lee Montgomery, husband of Fannie Montgomery, made a homestead entry on the quarter-section of land where the small springs are located and obtained patent thereto in 1915. Defendants admit that ditches were dug for the purpose of diverting the water to their land, but assert they had a right to do so by reason of the fact that the springs in question were dug out and developed by Mr. Montgomery in the early part of 1908, and that the water diverted at that time has ever since been continuously used for irrigation and domestic purposes, until the alleged willful and mali-

cious interference by the plaintiff. Defendants also claim that at the time the springs in question were developed the water as it originally existed percolated through the soil beneath the surface without any known or ascertainable course, and therefore belonged as an integral part of the land upon which the springs were located. After trial the lower court decreed that the plaintiff was entitled to the beneficial use of not to exceed thirty miner's inches of water flowing under six-inch pressure from the springs in question and enjoined defendants from interfering therewith to the extent as above stated. Defendants appeal.                    AFFIRMED.

For appellants there was a brief and oral argument by *Mr. V. A. C. Ahlf.*

For respondent there was a brief and oral argument by *Mr. O. S. Blanchard.*

BELT, J.—1. In this case we must determine whether the water in question was subject to appropriation, and, if so, who was first in time as an appropriator. If the water in these springs was of sufficient quantity to rise to the surface and to flow off in a definite channel with a tendency to regularity, it was subject to appropriation: *Brosnan* v. *Harris,* 39 Or. 148 (65 Pac. 867, 87 Am. St. Rep. 649, 54 L. R. A. 628); *Morrison* v. *Officer,* 48 Or. 569 (87 Pac. 896); *Hayes* v. *Adams,* 109 Or. 51 (218 Pac. 933); Wiel on Water Rights (3 ed.), § 336. Did the flow of water from these springs constitute a watercourse? If so, there can be no question in the light of the above authorities that appropriation would attach.

2. Justice LORD, speaking for the court in the much cited case of *Simmons* v. *Winters,* 21 Or. 35 (27 Pac.

7, 28 Am. St. Rep. 727), after collating the various authorities as to what constitutes a watercourse, reaches the conclusion:

"That a watercourse is a stream of water, usually flowing in a particular direction, with well-defined banks and channels, but that the water need not flow continuously—the channels may sometimes be dry * * which even to the casual glance bears the unmistakable impress of the frequent action of running water, and through which it has flowed from time immemorial. * * "

3. The evidence in this case clearly meets the test of the above definition of a watercourse. Aside from the testimony of the water-master of Josephine County and other disinterested and reputable witnesses that there is a substantial flow of water from these springs throughout the year, and that it may be traced in a well-defined channel, there is in evidence photographs taken in the dry season of July that strongly support the contention of the plaintiff in this regard. As indicative of the substantial flow of water from these springs it is significant that the defendant Fannie Montgomery, in January, 1921, made application to the State Engineer for permit to appropriate from the springs located in the SW. 1/4 of the NE. 1/4 of section 28, one fourth of a cubic foot of water per second for the purpose of irrigating fifteen acres of land. It is immaterial as to the source of a watercourse, provided the supply of water is permanent or at least periodical: *Brosnan* v. *Harris, supra; Hollett* v. *Davis,* 54 Wash. 326 (103 Pac. 423); 27 R. C. L. 1066; 40 Cyc. 554; Wiel on Water Rights (3 ed.), § 333. Plaintiff's predecessor in interest obtained patent from the government in 1876 to the land where she now lives, and there is evidence, al-

though somewhat uncertain in character, that water was used from these springs for domestic and irrigation purposes, as early as 1878; but since 1904, when plaintiff and her husband made their home on the present farm, it is established by clear and convincing evidence that water has been continuously diverted from these springs by plaintiff and that the same has been applied for irrigation, stock, and domestic uses, except during short intervals of time when the flow thereof was obstructed by the interference of the defendants.

4. If the water in question was subject to appropriation, and as a matter of fact was appropriated first by plaintiff or her predecessors in interest, it is immaterial whether defendant Fannie Montgomery subsequently acquired title to the land where the group of small springs are located for she would take it subject to any vested or accrued water rights: Rev. Stats. U. S., §§ 2339, 2340 (U. S. Comp. Stats., §§ 4647, 4648); *Davis* v. *Chamberlain,* 51 Or. 304 (98 Pac. 154); *Brosnan* v. *Harris, supra; Bruening* v. *Dorr,* 23 Colo. 195 (47 Pac. 290, 35 L. R. A. 640); 40 Cyc. 706. In fact, the letters patent from the government to defendants' predecessor in interest conveying the land upon which the small springs are located expressly provides that the grant is "subject to any vested and accrued water rights for mining, agriculture, manufacturing, or other purposes."

5. What has been said relative to the respective rights of prior appropriators and subsequent patentees has no application to the water rights of the litigants in the large springs, for the reason that the same are located on land which has always been and is now a part of the public domain of the United States. So far as this phase of the case

is concerned it is purely a question of priority of appropriation.

Defendants rely upon Section 5797, Or. L., which provides:

"All ditches now constructed, or hereafter to be constructed, for the purpose of utilizing the waste, spring, or seepage waters of the state, shall be governed by the same laws relating to priority of right as those ditches constructed for the purpose of utilizing the waters of running streams; *Provided, that the person upon whose lands the seepage or spring waters first arise, shall have the right to the use of such waters.*"

In construing the above section this court in *Borman* v. *Blackmon,* 60 Or. 304 (118 Pac. 848), said:

"This section is a substantial copy of Section 2269, Mills' Annotated Statutes of Colorado, from which, evidently, our legislature has taken the section of our code above quoted, and which was construed by the Supreme Court of Colorado, in the case of *Denver Ry. Co.* v. *Dotson,* 20 Colo. 304, 38 Pac. 322. In that case the plaintiff constructed on government land a ditch, by which he diverted the water from a certain canyon, and used it for irrigating land occupied by himself. The canyon was not a running stream, but was fed entirely by the rainfall in the surrounding hills. By the use of the water so collected, the plaintiff irrigated a large portion of his land. The court held that the appropriation was a valid one, notwithstanding the fact that the source of the appropriation was not a running stream. This construction of the statute appears to be reasonable, and has our approval."

Section 5829 of Pierce's Washington Code (1901) provides:

"All ditches now constructed, or hereafter to be constructed, for the purpose of utilizing the waste, seepage, or spring waters of the state, shall be cov-

ered by the same laws as those ditches constructed for the purpose of utilizing the waters of natural streams and lakes; Provided, that the person upon whose lands the seepage or spring waters first rise shall. have a prior right to such waters, if capable of being used upon his lands."

And the court in *Hollet* v. *Davis, supra,* in referring to the same said, "It has no application to a spring having a sufficient flow of water to form a watercourse."

We conclude that the water flowing from these springs was subject to appropriation and that plaintiff as an appropriator was prior in time to the defendants. It follows that the decree of the trial court is affirmed.                        AFFIRMED.

McBRIDE, C. J., and BEAN and BROWN, JJ., concur.