[No. 19108.  En Banc.  November 16, 1925.]

T. J. TIERNEY et al., Appellants, v. YAKIMA COUNTY, Respondent.[1]

WATERS AND WATER COURSES (24)—NATURAL WATER COURSES—WHAT CONSTITUTES—QUESTION FOR JURY. Whether a given course is a natural watercourse is a question of fact; and it is error to take the question from the jury, where it appeared that, except during periods of low water, a slough was fed by water flowing from a river by a watercourse of long standing, having a bed and banks and a current of water running through it.

SAME (35)—DIVERSION—RIGHT TO DIVERT AND LIABILITY FOR DIVERSION. Rem. Comp. Stat., § 4057-2, gives authority, in preventing floods, to deposit debris and material "on bars not forming obstructions to the stream or on subsidiary or high water channels of such watercourses."

Appeal from a judgment of the superior court for Yakima county, Nichoson, J., entered June 14, 1924, granting a non-suit, in an action in tort, after a trial before a jury. Reversed.

*Geo. F. McAulay,* for appellants.

*Sydney Livesey, G. E. Clark,* and *W. B. Bridgman,* for respondent.

MITCHELL, J.—This action was brought by T. J. Tierney and wife against Yakima county, to recover damages alleged to have been caused by the obstruction of the flow of water in one of the channels of Yakima River, together with other changes in and

[1]Reported in 239 Pac. 248.

16—136 WASH.

about the channels of the stream, which, acting together, caused an undue amount of water to flow through one of the channels on which plaintiffs' property is situated, overflow its banks and greatly damage their lands. Upon the trial of the case to a jury, a non-suit was granted at the close of the evidence on the part of the plaintiffs. They have appealed from a judgment dismissing the action.

At the place in question, the Yakima River runs in a southeasterly direction and is divided generally into what is called the north and south channels. North of these two channels, is what is called Beaver Slough. The slough runs southeasterly and is fed by a small stream and seepage from the lands north of the river and by a course from the so-called north channel of the river. It was the obstruction of the mouth or intake of this course by the county in 1922, together with other changes and so-called improvements made in connection therewith, which, it is alleged, caused the damages complained of.

The county maintains a highway, running northerly, with a bridge across each the south and north channels of the river, and one over Beaver Slough. Up the river near the highway and bridges, the river is divided into numerous channels, which cause a number of small islands. In 1922, the county built, and since has maintained, a dam at the intake of the water course leading from the north channel to Beaver Slough, at a point several hundred feet above the bridge, which prevented any river water flowing through the slough.

It was the answer and contention of the county that the course obstructed was of recent origin, occurring in 1921, and that it was obstructed to prevent the waters of the river from going that way, creating a new channel and threatening the destruction of the bridge over

Beaver Slough. That is, that the course obstructed was a high or flood water channel only, that carried nothing other than outlaw water, the danger of which to the county's property the county had the right to provide against. On the other hand, the claim of the appellants, supported by testimony, was that the course obstructed was one of the channels of the river, and that the county could not obstruct it in such way as to damage their lands below by the increased overflow of the river.

From the testimony introduced, a jury could readily find that the overflow which occurred upon the lands of the appellants was so much greater than that theretofore occurring at such usual seasonal freshets that it damaged the property of the appellants more than three thousand dollars; that the course obstructed was of long standing, and had a bed and banks, a current running through it; that it was one of the channels of the river and was the only way by which water could reach Beaver Slough from the north channel of the river.

One of the witnesses, familiar with the land and who had lived nearby for twenty years, testified, as follows:

"Q. In normal times, how much of the water did Beaver Slough carry? A. Not over twenty-five per cent, till it began flooding the surrounding land. Q. At low water, about how much did it carry? A. I would say about one one-thousandth of the water in the river, about. That would be when it is very, very low; in fact it is low sometimes and none at all runs around that way."

It often happens, as is well known, that, during long periods with but little rainfall, streams of considerable magnitude or their several channels become nearly dry in summer; and yet no one would hesitate to call them water courses. It is immaterial that the flow may be intermittent, or even that, at certain seasons of

the year, there may be little or even no flow of water. A most common definition of a water course is :

"It must appear that the water usually flows therein in a certain direction, and in a regular channel with banks and sides. It may not flow continuously, and it may at times be dry. It must have, however, a substantial existence." *Geddis v. Parrish,* 1 Wash. 587, 21 Pac. 314; Farnham, Waters and Water Rights, vol. 2, § 459.

27 R. C. L., p. 1066, § 7, upon citing a large number of cases, including *Rigney v. Tacoma Light & Water Co.,* 9 Wash. 576, 38 Pac. 147, 26 L. R. A. 425, says:

"And, while the source of a stream must have a well defined existence, its flow need not be continual, and the fact that the source of supply is intermittent and its flow interrupted during certain periods of the year in no way detracts from its character as a stream."

Also, see 40 Cyc. 556, § 5.

Whether a given course is a natural water course is a question of fact. This court so held in *Rigney v. Tacoma Light & Water Co., supra.* To the same effect, Farnham on Waters and Water Rights, at § 455, pp. 1553, 1554, vol. 2, citing *Vernum v. Wheeler,* 35 Hun (N. Y.) 55, says:

"The characteristics of a water course are as easily recognized as are those of most physical objects, and if the question is left to be decided by a jury as a question of fact, as it should be, there will be little difficulty in any case."

This question of fact was erroneously taken from the jury in the present case.

However, counsel for the respondent contend that, over and above the things just considered, it was fully warranted in doing the things complained of, under the terms of ch. 30, p. 101, Session Laws of 1921, entitled "An Act relating to floods and providing for the prevention thereof." Rem. Comp. Stat., § 4057-1 *et seq.*

The validity of that act, as applied to the present case, discussed in the briefs, need not be considered at this time.  It is enough to notice that, by the terms of § 2 of the act, authority is given to deposit debris and material "on bars not forming obstructions to the stream, or on *subsidiary or high water channels of such water courses.*" [Rem. Comp. Stat., § 4057-2.]   Under the scope of this provision of the act, there is still found in this case the same question as to whether the course obstructed was a natural water course or only a high water course to carry away the flood or outlaw waters, and that, as already observed, is a question of fact to be decided by the jury, under proper instructions as to the law.

Reversed with directions to set aside the judgment of nonsuit and grant a new trial.

TOLMAN, C. J., PARKER, MAIN, MACKINTOSH, and ASKREN, JJ., concur.

FULLERTON and HOLCOMB, JJ., dissent.