DONEY ET AL., APPELLANTS, *v.* BEATTY ET AL., RESPONDENTS.

No. 8946

Submitted March 9, 1950.  Decided May 25, 1950.

220 Pac. (2d) 77

Messrs. Burns and Thomas, Chinook, Mr. Harry L. Burns, Chinook, for appellants.  Mr. Burns argued orally.

. Mr. Oscar C. Hauge, Havre, Messrs. Hall, Alexander and Burton, Great Falls, Mr. H. C. Hall, Great Falls, for respondents. Mr. Hall argued orally.

MR. CHIEF JUSTICE ADAIR:

This is an appeal from a judgment rendered June 8, 1949, in the district court of Blaine county, the Honorable C. B. Elwell, judge presiding, in a suit in equity involving the use of certain waters in the drainage area of Hay Coulee.

Appeal No. 8039. The right to the use of the water in the water shed of Hay Coulee was involved in appeal No. 8039 in this court, Federal Land Bank of Spokane v. Morris, 112 Mont. 445, 116 Pac. (2d) 1007, wherein this court ordered modified a judgment of the district court of Blaine county, entered in May 1939 in an action brought by the Federal Land Bank, plaintiff, against Morris and 55 other named defendants.

Following the determination of appeal No. 8039, the district court of Blaine county, on March 6, 1942, made and entered a modified decree in the Federal Land Bank suit in conformity with the pronouncement of this court wherein only the Federal Land Bank, W. H. Morris and Alice M. Morris were decreed any water rights whatever in the action.

Appeal No. 8946. By complaint filed in December 1947 in the district court of Blaine county, Clarence Doney as an individual, and Chris D. Miller and Henry G. Miller, a copartnership, operating under the style of Miller Brothers, plaintiffs, commenced this suit against Lloyd Beatty, Helen Beatty, Raymond Lenhart, Mary Lenhart, Peter Woronik, Dorothy Woronik, James McClellan, Anker Holm, Casper Holm, and Federal Farm Mortgage Company, a corporation, defendants. The plaintiff Doney is the successor in interest of the Federal Land Bank and the plaintiffs Miller Brothers are the successors in interest of W. H. Morris and Alice M. Morris.

In this action plaintiffs seek: To have a court of equity adjudge them to be the successors in interest of the respective parties who were theretofore adjudged to have water rights in

the Federal Land Bank case; to have the court adjudge that none of the defendants in the instant action have any right whatever to the use of any of the water in Hay Coulee and to have the court issue an injunction enjoining defendants from claiming, holding or diverting any water in Hay Coulee until the claimed rights and claimed appropriations of plaintiffs have been fully supplied.

Defendants admit that plaintiffs are the successors in interest of Federal Land Bank, W. H. Morris and Alice M. Morris; deny that defendants have interfered with any of the water rights of plaintiffs as theretofore decreed to their predecessors and deny that the decree entered in the Federal Land Bank case is binding upon any of the defendants herein.

In the instant suit Judge C. B. Elwell, again presiding, made and filed written findings of fact and conclusions of law and on June 8, 1949, rendered judgment adjudging: (1) That the plaintiff Clarence Doney is the successor in interest to and entitled to all of the rights and benefits conferred upon the Federal Land Bank of Spokane in the decree of said district court so entered therein on March 6, 1942; (2) that the plaintiffs, Chris D. Miller and Henry G. Miller, as copartners, are the successors in interest to and entitled to all the rights and benefits conferred upon W. H. Morris and Alice M. Morris by said decree; (3) that plaintiffs are entitled to no injunctive or any other relief against defendants; and (4) that the appearing defendants have judgment for their costs.

Appellants assign various specifications of error, all involving the broad and important question of whether Hay Coulee as it exists on the lands of defendants is a water course with defined banks and channels through which the water, if not impounded in ponds and reservoirs by dikes and dams built on or adjacent to the lands of defendants, would flow to the land of plaintiffs for which water rights were adjudicated by the decree entered March 6, 1942, in the Federal Land Bank suit.

The Federal Land Bank case and this case were tried before the same judge sitting without a jury. During the trial of the

instant case the parties stipulated that Judge Elwell should make a personal view and inspection of the lands, reservoirs, dams and dikes of the respective parties and of the terrain involved in this action, and it appears from the record that the judge made such personal inspection.

In the Federal Land Bank case the court found that the water course to which the rights of the parties litigant are adjudged was Hay Coulee as it runs through township 36 north, range 17 and 18 east; and township 35 north, range 17 and 18 east, in Blaine county, Montana, and adjudged the Federal Land Bank to be the owner of the first right to the water in Hay Coulee in Blaine county and W. H. and Alice M. Morris to be the owners of the second right to the use of the water in Hay Coulee in Blaine county.

The trial court found all the lands of the defendants other than those of Anker Holm and Casper Holm to be situate in Hill county in township 37 north, range 17 east "to the northwest of Hay Coulee *as adjudged and described* in the decree of March 6, 1942." Emphasis supplied. There is substantial evidence which sustains this finding. It appears that the described land so located in Hill county is situate from 9 to 14 miles northwest of the lands of the plaintiffs for which their predecessors in interest were decreed water rights in the Federal Land Bank case.

The trial court further found that there is a reservoir known as the Massey reservoir with a capacity of 1,066 acre-feet now owned by the plaintiffs Miller brothers and situate north of the McLaren reservoir now owned by the plaintiff Doney and north of the Morris reservoir now owned by plaintiffs Miller brothers; that the waters appropriated by storage in the Massey reservoir were not directly or specifically adjudicated by the decree of March 6, 1942, in the Federal Land Bank case, except that the owner of the reservoir was prohibited by the general terms of such decree from impounding water therein until the rights of the Federal Land Bank and the rights of the defendants Morris had been filled.

It therefore appears that the appropriation of water rights by the defendants herein who live in Hill county (assuming for the moment that the capture or impounding of diffused surface water upon their respective premises during the time of melting snow in the spring and from heavy rains constituted an appropriation thereof) was not considered or determined in the findings of fact and decree entered on March 6, 1942, in the Federal Land Bank case. If such defendants or their predecessors in interest had no water right appropriation from *a defined water course* in Hay Coulee, it follows that none could be adjudicated to or against them, and, as shown above, none was adjudicated as to them in said decree of March 6, 1942.

In Heckman v. Northern Pac. Ry. Co., 93 Mont. 363, 379, 20 Pac. (2d) 258, 263, the term ''water course'' is defined as ''a channel cut by running water, with well defined banks through which water flows for substantial periods of each year.''

In Popham v. Holloron, 84 Mont. 442, 450, 275 Pac. 1099, 1102, this court defined a natural ''water course'' as '' 'a living stream with *defined banks and channel,* not necessarily running at all times, but fed from other and more permanent sources than *mere surface water'* (Le Munyon v. Gallatin Valley Ry. Co., 60 Mont. 517, 199 Pac. 915), which channel may at times be dry, so long as, to the *casual glance, it bears the unmistakable impress* of the frequent action of water which has flowed through it from time immemorable (Hildebrandt v. Montgomery, 113 Or. 687, 234 Pac. 267; Tierney v. Yakima County, 136 Wash. 481, 239 Pac. 248).'' Emphasis supplied.

While in the Popham case, supra, the court there found the record showed a ''natural 'water course' '' as defined in the above quotation from which a valid appropriation of water could be made, yet in Binning v. Miller, 55 Wyo. 451, 102 Pac. (2d) 54, which cites the Popham case, the facts as to the topography of Spring Gulch Creek there considered were most similar to those of Hay Coulee here involved and the court there said: '' Counsel also call attention to the statement of the witness Miller

that 'that channel existed before any white man came to the country.' But that statement is of no significance. The draw or depression or low place was there, of course. Water must escape. It runs in the low places. That does not show that the low place constituted a natural stream any more than the depression or swale which was fully discussed in the case of State v. Hiber, 48 Wyo. 172, 44 Pac. (2d) 1005. * * * David P. Miller testified that at that time Spring Gulch Creek in the *extreme lower part of section 6* has very definite channels and banks and so forth.' * * * The witness Glasgow, who was a witness for Binning, testified: 'Q. Doesn't it (the so-called Spring Gulch Creek)' or not, develop into a stream that is visible? A. Yes, at the *lower end* it develops into a stream, where this dam is.' It appears that the trial judge examined the ground. * * * we are not, we think, justified in holding that the finding of the trial court is wrong that Spring Gulch Creek *is a natural stream, in so far as the lower end of the swale or draw in question is concerned* where the claim of the intervener Charles J. Bayer originates * * *.'' [55 Wyo. 451, 102 Pac. (2d) 59.] Emphasis supplied. Binning v. Miller, supra. The court held also that surface waters in such gulch on land above where a *natural channel* had developed *was not* subject to *appropriation*.

In the case of State v. Hiber, 48 Wyo. 172, 44 Pac. (2d) 1005, cited in the above quotation, it appeared that the draw involved was dry most of the time, that it had no banks, that it was covered with grass, that it was mainly on defendant's land, that it contained running water only after heavy rains and during spring, that porous soil prevented water flowing for any distance, which facts warranted the adjudication that the draw was not a "water course" and that defendant could not be enjoined from impounding the water therein.

The facts in this case bring it within the rule of law as announced by the above authorities. The evidence in the record before us shows that Hay Coulee in Hill county at the upper end in sections 2, 3, 12, 13 and 14 of township 47 north, range 16 east, owned by the defendants Lenhart and McClellan,

is a slightly rolling prairie with no coulee whatever and covered with grass except where plowed and producing crops of grain extending across the low ground; that the slope or grade of the low ground or depression across defendants' lands is only about one foot per one thousand feet while the width of the depression or basin in the prairie varies from about one-quarter mile through the Lenhart and McClellan lands to about seven or eight hundred feet through the Beatty land in section 24, township 37 north, range 16 east, and section 19, township 17 north, range 17 east, and through the Woronik land in sections 20, 21, 29, 30, and 32, in township 17 north, range 17 east; that the depression through such lands is also covered with grass except where plowed and producing crops thereon.

It also appears that there are several small swales or depressions sloping into Hay Coulee as it passes over defendants' lands; that none of the swales or depressions have springs or evidence of running water therein and are all covered with grass except where plowed; that the only water appearing upon any of such prairie lands is from melting snow in the spring or rain during the spring and summer; that there is no marked channel with defined banks or other evidence of flowing water in the so-called Hay Coulee until it reaches a point some distance below the land of the defendant Woronik which land is located below the lands of the defendants McClellan, Lenhart and Beatty; that in order to capture and use water so accumulated on the lands of the respective defendants they constructed dikes or small dams at certain low places or depressions on their premises to impound such diffused surface water in reservoirs for watering livestock and adding moisture to the ground beneath the reservoirs for cultivation purposes.

The evidence further shows that the defendants employed a civil engineer and land surveyor to check Hay Coulee and their lands therein and to measure the reservoirs so impounding water upon their lands. The defendants having lands at the upper end of the coulee and their engineer all testified there was no sign of a water channel in Hay Coulee on or from the McClellan

land down to and through the Woronik land; that below the Woronik land and above the Massey reservoir the coulee is more pronounced and there is some sign that water has been running; that between such points there are several pot holes from 10 to 100 feet long, from 5 to 10 feet wide and from 2 to 10 feet deep; that these pot holes catch and hold the surface water arising from excessive melting of snow or heavy rains that may come down the coulee from above Massey reservoir.

A second engineer who testified for plaintiffs did not inspect the coulee above the Lenhart land, but testified that below the Lenhart reservoir "in the low places it shows a defined channel." However on cross-examination he testified:

"Q. Well now, what do you mean by 'channel'? A. Well, it showed where the watercourse would be when you would get the runoff in the spring. It might be 30 or 40 feet across and some places it would be pretty near 100 feet across. * * *

"Q. Now, I understand that by 'defined channel' you simply mean the low place in the coulee? A. Yes, sir, the low place in the coulee.

"Q. You are not talking about the point where a stream of water has eroded the soil and created banks, cutbanks? A. No.

"Q. You don't mean that? A. You don't find that in this north country."

The testimony of the above witness as so explained by him is not in conflict with that of the defendants nor with that of defendants' engineer whose testimony was to the effect that there was no defined channel with banks created by running water in Hay Coulee until one followed it below the Woronik land.

The evidence shows that the Massey reservoir which is about a mile below the Woronik land had a capacity of 1,066 acre-feet of water, an acre-foot of water being "the amount of water which would cover one acre one foot in depth, and containing 325,851 gallons of water." 2 Kinsey on Irrigation and Water Rights, 2d Ed., sec. 894, p. 1582.

The capacity of reservoirs of the defendants above the Massey

reservoir is as follows: McClellan's four contain a total of 44.5 acre-feet of water; Lenhart's one contains 47 acre-feet; Beatty's four contain a total of 51.5 acre-feet; and Woronik's six contain a total of 167.3 acre-feet, or a total of 310.3 acre-feet of water. McClellan had a reservoir built in 1915; Lenhart's reservoir was built in 1941; Beatty has one built in 1923; Woronik has two that were built in 1914 and 1915; Holm's reservoir was built in 1944.

We find no substantial evidence to satisfactorily establish that if all defendants' dams or dikes were removed from their lands the surface water that comes from melting snow or heavy rains would ever reach the lands of the plaintiffs, taking in account the loss that must come from seepage, evaporation and collection and capture in pot holes in the coulee before such water reaches the Massey and Morris reservoirs, both owned and controlled by the plaintiff Miller brothers. The evidence shows the Massey reservoir, located about five miles above the lands of the plaintiffs, has not been open for the release of water since 1929 nor has the water overflowed its dam in all that time.

The trial court further specifically found: "By reason of the gradual slope of the beds of the swales and draws upon the lands of the defendants McClellan, Lenhart, Beatty and Woronik, the natural obstructions in and adjacent to the beds thereof, the small area of drainage thereto, and the cultivation in and near said swales and draws, none of the surface water originating and collecting upon the respective lands of said defendants, except in times of extraordinary floods, would reach the Massey Reservoir or be available to the plaintiffs, or any thereof, for irrigation or other purposes."

As to the defendants, Anker Holm and Casper Holm, the situation is substantially the same, the evidence showing that there is no defined channel or water course with defined banks in the flat basin or depression in which their lands is situate; that such basin slopes gradually into Hay Coulee several miles below the Massey and Morris reservoirs and that the defendants Holm

have also impounded on their lands in such basin the surface water originating from melting snow and spring rains. From their dike or dam so impounding their surface water down to where the basin connects with Hay Coulee the Holm land is all plowed and cultivated by them. There is no substantial evidence to establish that if this surface water was not so impounded it would reach the lands of plaintiffs. Here again the trial court found: ''There is no competent evidence as to how much of surface water originating on the Holm lands would reach the Mc-Claren reservoir each year. None of such water would reach either the Massey or Morris reservoir.''

The McLaren reservoir is owned by plaintiff Doney and the other two reservoirs by plaintiffs Miller brothers. The trial judge, having viewed Hay Coulee and the land and reservoirs involved, was in a much more advantageous position to correctly determine the fact questions here presented than are the members of this court who must rely upon the cold printed record presented to us on this appeal.

However, from such record it appears to us that there is no water course having a marked channel and defined banks, but only diffused surface water coming from melting snows or rains, which at times collects or stands in low places, depressions, pot holes, and shallow basins. As to such diffused waters the plaintiffs did not and they cannot make a valid appropriation for use on their lands located a number of miles below, and the defendants have the right to collect, capture and impound such diffused surface drainage while it is on their own lands and farms for use thereon.

The statute provides that ''an appropriator may impound flood, seepage, and waste waters in a reservoir and thereby appropriate the same.'' R. C. M. 1947, sec. 89-801. See Raymond v. Wimsette, 12 Mont. 551 at pages 560, 561, 31 Pac. 537, 33 Am. St. Rep. 604.

Considerable law has developed around the physical distinction between legal watercourses and diffused surface waters as

the basis for determining whether or not the law of watercourses shall be held applicable to the facts in a given case.

A water course in general has a definite channel as well as a ▮ flow of water while diffused surface waters are waters which, in their natural state, occur on the surface of the earth in places other than water courses or lakes or ponds. The diffused surface waters may originate from any natural source. They may be flowing, vagrantly over broad lateral areas or, occasionally for brief periods, in natural depressions, or they may be standing in bogs or marshes.

The essential characteristics of diffused surface waters are that their flows are short-lived and that the waters are spread over the ground and not concentrated or confined in channel flows of legal watercourses nor yet concentrated or confined in bodies of water conforming to the definition of lakes or ponds.

In 1 Kinney on Irrigation and Water Rights, 2d Ed., in discussing water courses in section 301, at page 486, the author quotes with approval the definition of a water course appearing in an Idaho case, as follows: " 'A water course is a stream of water flowing in a definite channel, having a bed and sides or banks, and discharging itself into some other stream or body of water. The flow need not be constant, but must be more than mere surface drainage occasioned by extraordinary causes; there must be substantial indications of the existence of a stream which is ordinarily a moving body of water'." Again in section 312, Kinney says: "But a water course does not include holes, gullies, or ravines in land, in which *mere surface water* from *rain* or *melting snow* at irregular periods, is discharged through them from a higher to a lower level, and which at other times are destitute of water. In the absence of a permanent source of water supply there can be no water course in its legal sense." Emphasis supplied. See: 1 Wiel on Water Rights in the Western States, 3d Ed., page 354, sec. 334; LeMunyon v. Gallatin Valley Railway Co., 60 Mont. 517, 199 Pac. 915.

The findings of the trial court are supported by ample substantial evidence. We find no merit in any of the specifications

assigned,—we find no showing of any abuse of discretion on the part of the trial court, nor do we find any prejudicial error in the record. Accordingly, the judgment is affirmed.

ASSOCIATE JUSTICES FREEBOURN and METCALF concur.

MR. JUSTICE ANGSTMAN:

I concur in the result but not with all that is said in the foregoing opinion.

MR. JUSTICE BOTTOMLY:

I dissent. Where a stream with tributaries has been adjudicated and an appropriation established, such a tributary may not be dammed up, the water therefrom withheld or diverted to the detriment of the prior appropriator. In the event the law relating to the use and appropriation of water is to be changed, it should be by act of the legislature, not by the court. It appears to me that the majority opinion will cast uncertainty upon many appropriators who thought they had vested rights in the use of such water.

Rehearing denied July 29, 1950.