[No. 7453.  Decided May 1, 1909.]

JOHN W. HASTIE *et al.*, *Respondents*, v. JOHN JENKINS *et al.*, *Appellants*.

E. F. SCHROCK *et al.*, *Respondents*, v. JOHN JENKINS *et al.*, *Appellants*.

THE COULEE LIVE STOCK COMPANY, *Respondent*, v. JOHN JENKINS *et al.*, *Appellants*.[1]

APPEAL—REVIEW—EVIDENCE—HARMLESS ERROR.  Error in the admission of evidence in an equitable case is harmless.

WATERS AND WATER COURSES—WHAT ARE—LAKES—OBSTRUCTION—INJUNCTION—DAMAGES—EVIDENCE—SUFFICIENCY.  A dam causing the overflow of lands bordering upon a depression, swamp or lake, is an unlawful obstruction of a natural water course, and not a mere protection against surface waters, where it appears that the depression or lake was practically a continuation of, and received the overflow from, another lake, and that the water course had a well defined channel, was the natural outlet of the lakes, and was the only means of discharging the waters thereof during high water season; and such obstruction will be enjoined, with damages for its maintenance.

Appeal from a judgment of the superior court for Douglas county, Steiner, J., entered October 5, 1907, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action to enjoin the obstruction of a water course, and for damages.  Affirmed.

*W. A. Reneau* and *Hannan & Clapp*, for appellants.  A ditch for drainage of surface water is not a water course.

[1]Reported in 101 Pac. 495.

Anderson, Dictionary of Law, p. 1108; 30 Am. & Eng. Ency. Law (2d ed.), p. 347; *Hawley v. Sheldon,* 64 Vt. 491, 33 Am. St. 941; *Simmons v. Winters,* 21 Ore. 35, 27 Pac. 7, 28 Am. St. 727; *Hoyt v. Hudson,* 27 Wis. 656, 9 Am. Rep. 473; *O'Connor v. Fon du Lac etc. R. Co.,* 52 Wis. 526, 9 N. W. 287, 38 Am. Rep. 754; *Lessard v. Stram,* 62 Wis. 112, 22 N. W. 284, 51 Am. Rep. 715; *Chicago etc. R. Co. v. Morrow,* 42 Kan. 339, 22 Pac. 413. The water must usually flow in a certain direction and in a regular channel with banks and sides. *Geddis v. Parrish,* 1 Wash. 587, 21 Pac. 314; *Cass v. Dicks,* 14 Wash. 75, 44 Pac. 113, 53 Am. St. 859; *Rigney v. Tacoma Light & Water Co.,* 9 Wash. 576, 38 Pac. 147, 26 L. R. A. 425; *Ellis v. Pomeroy Imp. Co.,* 1 Wash. 572, 21 Pac. 27. Water flowing not within a water course, as legally defined, or standing upon the surface of the land, is surface water and a landowner may retard its flow or dam it up without being liable in damages. *Rowe v. St. Paul etc. R. Co.,* 41 Minn. 384, 43 N. W. 76, 16 Am. St. 706; *Cario etc. R. Co. v. Stevens,* 73 Ind. 278, 38 Am. Rep. 139; *Taylor v. Fickas,* 64 Ind. 167, 31 Am. Rep. 114; *Hoyt v. Hudson, supra; Johnson v. Chicago etc. R. Co.,* 80 Wis. 641, 50 N. W. 771, 27 Am. St. 76, 14 L. R. A. 495; *Swett v. Cutts,* 50 N. H. 439, 9 Am. Rep. 276; *Imles v. Springfield,* 65 Mo. 119, 17 Am. Rep. 645; *Missouri Pac. R. Co. v. Keys,* 55 Kan. 205, 40 Pac. 275, 49 Am. St. 249; *Chadeayne v. Robinson,* 55 Conn. 345, 11 Atl. 592, 3 Am. St. 55; *Franklin v. Fisk,* 13 Allen 211, 90 Am. Dec. 194; *Gannon v. Hargadon,* 10 Allen 106, 87 Am. Dec. 625; *Cass v. Dicks, supra; Noyes v. Cossleman,* 29 Wash. 635, 70 Pac. 61, 92 Am. St. 937; *Sullivan v. Johnson,* 30 Wash. 72, 70 Pac. 246; *Darlington v. Board of Commissioners,* 75 Kan. 810, 88 Pac. 529. A water course is a living stream with defined banks and channel fed by other and more permanent sources than mere surface waters. *Jeffers v. Jeffers,* 107 N. Y. 650, 14 N. E. 316; *Barkley v. Wilcox,* 86 N. Y. 140, 40 Am. Rep. 519. There must always be a substantial indication of a stream which is ordinarily

and most frequently a moving body of water. *Hill v. Cincinnati etc. R. Co.*, 109 Ind. 511, 10 N. E. 410; *Briscoe v. Drought*, 11 Ir. C. L. Rep. 25; *Ashley v. Wolcott*, 11 Cush. 192; *Shields v. Arndt*, 4 N. J. Eq. 234; *Schlichter v. Phillipy*, 67 Ind. 201. Overflow waters in time of freshets from a pond, created by melting snow or falling rains is surface water. *Bowlsby v. Spear*, 2 Vroom 351, 86 Am. Dec. 216; *Brandenberg v. Zeigler*, 62 S. C. 18, 89 Am. St. 887, 55 L. R. A. 414; *Miller v. Laubach*, 47 Pa. St. 154, 86 Am. Dec. 521; *Gilfillan v. Schmidt*, 64 Minn. 29, 66 N. W. 126, 58 Am. St. 515, 31 L. R. A. 547; *Sheehan v. Flynn*, 59 Minn. 436, 61 N. W. 462, 26 L. R. A. 632; *Peck v. Herrington*, 109 Ill. 611, 50 Am. Rep. 627; *Goodale v. Tuttle*, 29 N. Y. 459; *Frazier v. Brown*, 12 Ohio St. 294; *Peck v. Goodberlett*, 109 N. Y. 180, 16 N. E. 350; *Guesnard v. Bird*, 33 La. Ann. 796; *Meixell v. Morgan*, 149 Pa. St. 415, 24 Atl. 216, 34 Am. St. 614; *Dayton v. Rutherford*, 128 Ill. 271, 21 N. E. 198.

*Danson & Williams* and *M. B. Malloy*, for respondents.

DUNBAR, J.—The plaintiffs in the above entitled causes brought three separate actions in the superior court of Douglas county, against the above-named defendants, primarily for a mandatory injunction and for damages incident to the wrong sought to be redressed by the action. By consent of all parties, the cases were consolidated. The plaintiffs were all owners of lands in the Grand Coulee, in Douglas county, Washington, and the gist of the three actions was the same and, as the appellants contend, was based upon the same facts, which were set out in four paragraphs of each of the complaints, as follows:

"(3) That Steamboat Lake at all times hereinafter mentioned was and now is a natural lake, situate in said county and state, and that the waters of said lake flow out of said lake through a natural water course known as 'Outlet Creek.'

"(4) That prior to the erection of the dam hereinafter

described, said water course was sufficient to and did carry the water out of said lake at all times, and said waters did not and would not now if said creek was unobstructed by said dam overflow the above described lands or any part thereof.

"(5)   That the above described lands are situated on and lie along the shore of said lake, and that prior to the erection of the dam hereinafter described said lands were elevated above the ordinary high water level of said lake.

"(6)   That heretofore, to wit, on or about the 10th day of December, 1904, the said defendants without the consent and against the protest of plaintiffs erected a dam over and across said Outlet Creek, and that said defendants did thereby obstruct the natural flow of water in said creek and lake to back up and overflow, inundate and submerge a greater portion of said land, to wit, about 400 acres thereof, and that defendants ever since have and do now maintain said dam."

Upon the trial of the cause, judgment was entered for damages in different amounts to the different plaintiffs, and an injunction was granted in favor of all the plaintiffs.

It is urged by the appellants that the court erred in receiving certain testimony. But this assignment is not pertinent, for this being an equitable action, all testimony which should not have been admitted in the case will be disregarded by this court. The other errors are based upon the findings of fact, it being claimed that the court erred in making certain of the findings, and in its conclusions of law therefrom.

The important contention of the appellants is that the waters which were thrown back upon respondents' land were not the waters of any lakes or water courses, but were surface waters which the appellants had a right to protect themselves against, and that all damages which accrued to the respondents by reason of such protection were *damnum absque injuria*. But an examination of this testimony convinces us that the facts found by the court were fairly justified by the evidence adduced at the trial; that it was established that Devil's Lake when very full overflowed into what was called Steamboat Lake, which was practically a contin-

uation of Devil's Lake, and that Steamboat Lake found its outlet into Outlet Creek, the creek upon which the appellants erected their dam, which was the cause of the backing of the water over the lands of the respondents.

The testimony shows conclusively that Outlet Creek was the only means by which these lakes could divest themselves of water during the high water season. The contention of the appellants is, that this lake was nothing but a swag or depression, and that it was not in any sense a lake, and that Outlet Creek was not in any sense a water course; that to be a water course a stream must have a well defined, substantial existence; that it must possess that unity of character by which the flow on one person's land could be identified with that on his neighbor's land, and that there is a broad distinction between a regular flowing stream and an occasional and temporary outburst of water, which in times of freshets fills up low places and runs over and inundates adjoining lands; citing authorities to sustain that position, which is probably correct. As we have seen, the testimony in this case shows that this was a water course and an outlet of this lake. It does not matter whether it be called a swag, or a swamp, or a creek, or whether its course is straight or crooked. The channel in this case was shown to have well defined banks, and it was shown that the creek was the natural outlet for the water of the lakes, and that the waters flowing through said channel all reached a common place.

This case, it seems to us, is very much like the case of *Rigney v. Tacoma Light & Water Co.*, 9 Wash. 576, 38 Pac. 147, 26 L. R. A. 425, although that was an action to prevent the diversion of water, where, in speaking of Clover Creek, it was said:

"Having a bed, banks and current, it is a natural water course, even although it may, at times, be dry;"

citing Gould on Waters, § 41.

"Both Spanaway Creek and Upper Clover Creek are virtually conceded to be natural streams of water, and the mere

fact that their united volume spreads out into a broad sheet with currents, covering a large area of low ground to which the appellation of swamp or lake has been given, does not deprive them of their character as water courses."

Upon the question of whether a given body of water is a lake or pond or river, Gould, in his work on Waters, § 79, says:

"The fact that there is a current from a higher to a lower level does not make that a river which would otherwise be a lake, nor does a lake lose its distinctive character because there is a current in it for a certain distance tending towards a river which forms its outlet. On the other hand, the fact that a river broadens into a pond-like sheet with a current does not deprive it of its character as a river. . . . this question cannot be answered by ascertaining what appellations have been given to it."

In the above mentioned case we also cited *Case v. Hoffman,* 84 Wis. 438, 54 N. W. 793, 36 Am. St. 937, 20 L. R. A. 40, where it was held that the fact that a stream spread over wide reaches of marshes and swamps, on or below the surface, did not militate against its being a water course in every essential particular, so long as it could be identified as the same stream.

Angell on Water Courses, § 330, after laying down the general proposition that any one who obstructs water in such a manner as to cause it to overflow the land of riparian proprietors and other landowners above is responsible for all damages caused thereby, concludes:

"The law upon this subject as thus laid down, has never been called in question, and is so well settled and so obviously just, that if one tenant in common upon which a mill is situated, erects a dam below on the same water course, upon his several estate, and thereby flows the common property to the injury of his cotenant, the latter may maintain an action against him."

In view of these and other authorities which all sustain the same rule, and under the testimony in this case, we are

forced to the conclusion that the waterway which was dammed by the appellants was a water course which they had no right to obstruct. We think that it cannot be reasonably questioned but that the respondents were entitled to an injunction in this case. This question was also decided in *Rigney v. Tacoma Light & Water Co., supra; Winsor v. Hanson,* 40 Wash. 423, 82 Pac. 710; *Madson v. Spokane Valley Land & Water Co.,* 40 Wash. 414, 82 Pac. 718, 6 L. R. A. (N. S.) 5; *Treat v. Bates,* 27 Mich. 390; *Cowles v. Kidder,* 24 N. H. 364, 57 Am. Dec. 287.

That the respondents were entitled to whatever damages they proved had been inflicted upon them by the action of the appellants in this character of a case will not be disputed, and we think the testimony warrants the judgments rendered in that particular.

The judgment is therefore affirmed.

RUDKIN, C. J., CROW, MOUNT, and FULLERTON, JJ., concur.