[No. 12472. Department One. February 3, 1915.]

ALLEN MILLER, *Respondent*, v. EASTERN RAILWAY & LUMBER COMPANY, *Appellant*.[1]

WATERS AND WATER COURSES—WHAT CONSTITUTES—STREAMS OR SURFACE WATER—EVIDENCE—SUFFICIENCY. In an action for damages for the obstruction of waters, causing an overflow of adjoining lands, a finding that the same was a water course, and not surface waters, is sustained where it appears that living and flowing waters from a gulch to the east flow or move to the westward in all seasons and under all conditions, spreading out over and crossing plaintiff's low lands by natural gravitation and finding their way into a water course to the west of plaintiff's lands, which were agricultural lands and easily made dry and fit for cultivation by surface ditches converging toward such water course.

SAME—SPREADING WATERS. In such a case, if the same was not a water course within the common definition of the term, it is a water course in the sense that there is a natural gravitation of living, flowing waters which one proprietor cannot arrest to the damage of his neighbor.

[1]Reported in 146 Pac. 171.

SAME—SWAMP LANDS. In such a case, the plaintiff's land was not swamp land, but natural soil over which a water course has spread itself, and the owner had a right to direct the waters in surface ditches over his land.

APPEAL—REVIEW—HARMLESS ERROR—CURED BY VERDICT. In an action for damages to crops and live stock by the obstruction of a stream and overflowing plaintiff's lands, in which the court instructed the jury that the plaintiff could not recover for loss of live stock if acts of the plaintiff concurred to produce the loss, or if the jury was unable to say which cause produced it, and there was ample evidence to sustain the verdict by reference to damage to crops alone, it is a fair inference that the verdict was based on the loss of crops, and error cannot be predicated on the evidence or instructions relating to the live stock.

Appeal from a judgment of the superior court for Lewis county, Rice, J., entered April 13, 1914, upon the verdict of a jury rendered in favor of the plaintiff, in an action for damages for overflowing lands. Affirmed.

*Forney & Ponder, Dysart & Ellsbury,* and *C. D. Cunningham,* for appellant.

*A. A. Hull* and *J. M. Orrick,* for respondent.

CHADWICK, J.—Respondent is a lessee in possession of a tract of land lying east of property owned by appellant, and occupied by it as a sawmill property. The property was low ground and is put to agricultural and garden uses. Before the land was cleared and cultivated, the surface waters and waters drawn from a gulch to the east of respondent's property scattered over his land. Three ditches have been dug across the land. These flow into a channel called China Ditch. The three ditches converge at or about the east line of appellant's property. In the spring of 1913, appellant, intending to dredge and deepen its mill pond, cut a ditch across its own premises from a point above its mill leading down to China Ditch, its purpose being to lead the water around its pond so that its continued flow would not interrupt or interfere with the work of dredging and deepening the mill pond. The plan necessitated the damming of

the old time ditch so as to divert the flow. A great bank of earth was thrown out by the dredger. This in turn was leveled with a scraper and by playing a hose upon it for the purpose of washing it down. The new or temporary ditch was bulk-headed. It is contended that the ditch was allowed to become broken, filled and choked with mud and debris, so that the waters could not flow with sufficient rapidity to prevent a back flow and covering of a material part of respondent's land with water. The jury returned a verdict for $150. After the usual motions had been overruled, judgment was entered on the verdict.

The first contention is that the evidence is not sufficient to sustain the verdict. This contention is predicated upon legal questions which are saved by exceptions to the instructions given and refused, and we shall pass it, for unless the law be as appellants contend, it is clear to us that there is evidence to sustain the verdict.

Several assignments raise the question whether, under the testimony, the waters flowing over respondent's lands were surface waters or a water course within the definition of that term.

The court very fully and fairly instructed the jury defining water courses and surface waters. The jury were told that respondent could not recover unless they found a water course over respondent's lands. The court defined a water course as a stream having beds, banks, and a periodical flow, and instructed that it was not necessary to prove that the water at all times flowed within defined banks; that if it spread out over land so as to make it swampy in character, yet, nevertheless, if it continued in a general course over the respondent's land, the defendant would not have a right to obstruct the flow. There was testimony sufficient to sustain a finding of the jury upon this theory of the law. Moreover, the jury viewed the premises and must have found that the testimony of the respondent and his witnesses had a foundation in fact.

Appellant insists that the flow is that of surface waters, and it had a right to obstruct it even to causing a back flow over the respondent's lands whenever the necessity of protection or lawful use of its own property required it.

This court has held to the outlaw doctrine of surface waters. *Wood v. Tacoma*, 66 Wash. 266, 119 Pac. 859; *Harvey v. Northern Pac. R. Co.*, 63 Wash. 669, 116 Pac. 464. A swamp or swale is not ordinarily held to be a water course. *Hayward v. Mason,* 54 Wash. 653, 104 Pac. 141; 1 Kinney, Irrigation & Water Rights, p. 515. But it would not follow that the waters of a swamp are surface waters. A swamp or swale may be a water course. If the waters which had accumulated upon respondent's land had flowed in natural channels up to or about the east line of his property and then spread out over an area without beds and banks so as to form a swamp, the stream would be a water course. 1 Kinney, Irrigation & Water Rights, pp. 512-515; *Hastie v. Jenkins*, 53 Wash. 21, 101 Pac. 495.

"Where the stream usually flows in a continuous current, the fact that the water of the stream, on account of the level character of the land, spreads over a large area without apparent banks does not affect its character as a watercourse. *Macomber v. Godfrey*, 108 Mass. 219 (11 Am. Rep. 340); *West v. Taylor*, 16 Or. 165 (13 Pac. 665)." *Miller & Lux v. Madera Canal & Irr. Co.*, 155 Cal. 59, 99 Pac. 502, 22 L. R. A. (N. S.) 391.

Where there is a spreading of a stream which still moves by natural gravitation in a certain direction to a common or defined channel, it is a water course. In the case at bar, the waters flowing across respondent's land find their way into the water course called China Ditch. There is testimony tending to show, in the instant case, that the waters complained of flow or move to the westward in all seasons and under all conditions.

Nor can it be said that the waters of which respondent complains are surface waters. Surface waters which may

become vagrant and subject to outlawry are waters accumulating and spreading in consequence of heavy rains and storms. *Cass v. Dicks*, 14 Wash. 75, 44 Pac. 113, 53 Am. St. 859; 40 Cyc. 639.

" 'Surface' water may be defined as water on the surface of the ground, the source of which is so temporary or limited as not to be able to maintain for any considerable time a stream or body of water having a well defined and substantial existence." 1 Kinney, Irrigation & Water Rights, § 318.

The distinction governing in this case may be illustrated by reference to *Dickey v. Maddux*, 48 Wash. 411, 93 Pac. 1090, and *Hayward v. Mason, supra.* In these cases the lands sought to be made the subject of riparian right were held not to be so. In each case the court assigned as a reason for its holding the fact that there was no outlet to the swamp or bog. If it had been otherwise, it is evident that the court would not have held as it did.

Neither is respondent's land swamp land within the ordinary meaning of that term. Swamp land has been defined to be such as requires drainage to fit it for cultivation. *San Francisco Sav. Union v. Irwin*, 28 Fed. 708. In the instant case, it appears that no more was required than to dig a few surface ditches to confine the flow. With the waters flowing in the surface ditches the land was dry and fit for cultivation. A right to change a channel or to confine spreading waters in a fixed channel, no right of the public or of any third party intervening, is a right incident to the proprietorship of land. *State v. Barker*, 37 Utah 345, 108 Pac. 352, 27 L. R. A. (N. S.) 1138.

Whether, in discharging the waters from his land, respondent has injured appellant, we are not called upon to say. That case is not before us.

We conclude: if this case be resolved as a question of fact under the instructions of the court, there is sufficient testimony to sustain the verdict and consequent conclusion that the flow is a water course, within the common definition of the

term; or, if it be not that, it is a water course in the sense that there is a natural gravitation of living, flowing waters, which one proprietor cannot arrest to the confusion and damage of his neighbor; or, it may be held that the land is not swamp land, but natural soil over which a water course has spread itself and the owner had a right to lead the waters in surface ditches and over his land. Upon any one of these theories, the verdict of the jury must be sustained.

It is complained that the court permitted testimony tending to prove that the accumulated waters caused the death of some of respondent's poultry and live stock. A part of this testimony was stricken and the jury was cautioned not to consider it. It appeared that respondent fed his poultry on swill gathered in the city. Appellant insists that it is as likely that respondent's poultry suffered from the character of the food given them as from the water which had been backed over the land. The court instructed the jury that, if it found that the act of respondent concurred with that of the plaintiff and the two causes produced the loss of poultry and stock complained of, respondent could not recover; and further, if it was unable to say to which cause the loss might be attributed, it should find for the appellant. There is ample testimony to sustain a finding that respondent's crops were damaged in a sum equal to the verdict. It is a fair conclusion that the jury, under the instructions of the court, rejected all the elements of damage going to the loss of poultry and live stock, and based its verdict upon a finding that appellant was answerable for the loss of crops alone.

The judgment of the lower court is affirmed.

Morris, C. J., Mount, Parker, and Holcomb, JJ., concur.