[No. 13048.  Department Two.  April 21, 1916.]

GEORGE S. TRIGG, *Appellant*, v. CHARLES F. TIMMERMAN
*et al.*, *Respondents*.[1]

WATERS AND WATER COURSES—SURFACE WATERS—DIVERSION.  An
upper proprietor may by means of drainage ditches conduct and
hasten the flow of surface waters naturally draining into a gully, in
case it does not increase the quantity of water naturally reaching
the lands of a lower proprietor.

Appeal from a judgment of the superior court for What-
com county, Brawley, J., entered March 19, 1915, upon find-
ings in favor of the defendants, in an action for an injunc-
tion, tried to the court.  Affirmed.

*Frank W. Bixby, R. J. Nightingale & Son*, and *Bixby &
Nightingale*, for appellant.

*Hurlbut & Neal*, for respondents.

PARKER, J.—Plaintiff, George S. Trigg, seeks to have the
defendants, Timmerman and wife, restrained from maintain-
ing upon their land certain drainage ditches from which
water flows upon his land.  Trial of the case in the superior
court for Whatcom county resulted in judgment for the de-
fendants, from which plaintiff has appealed.

For a period of some twenty years or more, appellant has
owned a farm, in Whatcom county, consisting of a square
forty-acre tract, and also, in connection therewith, a right of
way for road purposes over a strip of land twenty-five feet
wide adjoining his farm on the north.  During the same
period, respondents have owned a farm consisting of two
square forty-acre tracts, the easterly one of which lies im-
mediately to the north and across this road from appellant's
land.  Extending northerly from a short distance north of
the south boundary of appellant's land, through appellant's

[1]Reported in 156 Pac. 846.

and respondents' land and across this road, to a short dis-
tance beyond the northerly boundary of respondents' land,
is a swale about five hundred feet wide, the ground rising on
each side thereof from six to eight feet. This swale, in its
natural condition, consists of wet, marshy ground. It slopes
slightly to the south and drains naturally into a gully near
the south boundary of appellant's land. There is no barrier
to the flow of the water to the south in this swale, other than
as the flow is impeded somewhat by the slight fall of the
ground to the south and the somewhat boggy condition of
the soil.

About fourteen years before the commencement of this
action in the fall of 1914, appellant, with a view of improv-
ing his roadway to the north of his land, cleared and graded
it across this swale, leaving a ditch on each side thereof. He,
at the same time, constructed a culvert across and under
the improved roadway a little east of the center of the line
of the swale, for the purpose of allowing the water to flow
through into an open ditch running from that point south
to the head of the gully into which the swale naturally drains,
which ditch had theretofore been constructed by appellant.
The improvement of this roadway, had the culvert not been
constructed therein, would have the effect of impeding the
flow of the water to the south through the swale, somewhat
as a dam, though it is possible the water might have found
its way through the roadway by seepage without raising to
a sufficient height to flow over it. The improvement of the
roadway and the construction of the ditch running to the
head of the gully enabled appellant to clear and bring into
a state of good cultivation about five acres of his land lying
immediately to the south of the road and, for the most part,
to the west of his ditch.

Since the making of these improvements by appellant, up
until October, 1914, appellant's ditch was of sufficient capac-
ity to carry all of the water flowing through the culvert from
the northerly portion of the swale, so that the water did not

interfere with the farming of his cultivated land. During a period of several years prior to six years before October, 1914, respondents, at different times, constructed and extended four or five drainage ditches upon their land which tended to hasten the flow of the water from the northerly part of the swale to the south, and through the culvert into appellant's ditch leading to the gully to the south.

In October, 1914, appellant changed his ditch, leading from the culvert to the south, from an open to a blind or underground ditch, by putting in wooden boxing and covering it with earth. This boxing, at its north end near the culvert, was placed somewhat higher than the bottom of the former open ditch. The entrance to the boxing was also sought to be protected by appellant by the use of wire screens, as he claimed, to prevent the passing into it of leaves and other material which might tend to choke it. The evidence seems to warrant the conclusion that this boxing was of sufficient size to carry all of the water coming from the north of the road even though the flow may have been somewhat hastened by respondents' ditches beyond what it naturally would be, had that end of the boxing been as low as the appellant's former open ditch and left unobstructed by screens. Soon after this change made by appellant in his ditch to an underground ditch, water overflowed his cultivated land, evidently because of the fact that it would not all flow into the boxing. This condition, appellant insists, was caused by respondents extending and deepening their main ditch just north of the culvert so as to materially increase the flow of the water, which, as he insists, caused the overflow at the head of his underground ditch near the culvert.

The trial court found, in substance, that appellant's open ditch had always been sufficient to carry all of the water coming through the culvert from respondents' land, and that the boxing of appellant's underground ditch was sufficient to carry all of the water if made low enough at its intake near the culvert and left unobstructed. We also gather from the

court's findings, though they are not very specific in that respect, that the construction of respondents' ditches upon their land, which tended to hasten the flow of water to and through the culvert, did not result in any greater quantity of water reaching appellant's land than would have reached it by nature. We think these facts are established by the evidence.

Counsel for appellant invoke the general rule that an owner of land has no right to collect surface water thereon and discharge it in a concentrated body upon the lower land of his neighbor to his neighbor's material damage. They rely particularly upon the decisions of this court in *Peters v. Lewis*, 28 Wash. 366, 68 Pac. 869; *Noyes v. Cosselman*, 29 Wash. 635, 70 Pac. 61, 92 Am. St. 937, and *Sullivan v. Johnson*, 30 Wash. 72, 70 Pac. 246. We think that a critical reading of those decisions will show that they are not applicable to the conditions here involved. The *Peters* case deals with drainage from the roofs of buildings, and also sewer drainage. The *Noyes* and *Sullivan* cases deal with drainage of surface water from land of an upper proprietor by the cutting through of a natural barrier. These conditions, we think, are distinguishable from the conditions here involved. It seems to us, in view of the nature of this swale and the fact that the water therein flows to the south to the gully unobstructed by any natural barrier other than the considerable width of the swale and its somewhat boggy condition, though it may not have had in a state of nature a well defined line along which the water flowed, that the observations of the learned editors in their note found in 19 L. R. A. (N. S.) 167, are applicable here. We there read:

"The principle very generally accepted by the courts, that the owner of higher land may not concentrate at one point surface water diffused over the surface, and discharge it in a mass upon the lower land, does not apply to natural depressions or drain ways through which the surface water on the higher land drains onto the lower land. On the contrary, it is established by the great weight of authority that the

flow of surface water along such depressions or drain ways may be hastened and incidentally increased by artificial means so long as the water is not diverted from its natural flow."

In *Manteufel v. Wetzel*, 133 Wis. 619, 114 N. W. 91, 19 L. R. A. (N. S.) 167, 170, Justice Timlin, speaking for the court, said:

"Where the upper proprietor does no more than collect in a ditch, which ditch follows the course of the usual flow of surface water, the surface water which formerly took the same course toward the land of the lower adjacent proprietor, and causes to pass through this ditch the surface water which formerly took the same course but spread out over the surface, he has committed no actionable legal wrong of which the lower proprietor can complain, or upon which such lower proprietor can maintain an action. In other words, causing surface water to flow in its natural direction through a ditch on one's own land, instead of over the surface or by percolation as formerly, where no new watershed is tapped by said ditch and no addition to the former volume of surface water is caused thereby, except the mere carrying in a ditch what formerly reached the same point on defendant's land over a wider surface by percolation through the soil, or by flowing over such wider surface, is not, when not negligently done, a wrongful or unlawful act."

Our decisions in *Hastie v. Jenkins*, 53 Wash. 21, 101 Pac. 495, and *Miller v. Eastern R. & Lumber Co.*, 84 Wash. 31, 146 Pac. 171, are in harmony with our conclusion here reached that this swale is a water course, in the sense that there is a natural gravitation of water therein towards the south, and that respondents have the right to hasten the flow of water therein, to and through the culvert constructed by appellant under his roadway, by their construction of ditches upon their land. This, we think, is specially true in view of the fact that appellant improved his roadway and constructed this culvert in such manner as to make that the only outlet for the water of the swale north of his roadway. *Schrope v. Trustees of Pioneer Township*, 111 Iowa 113, 82 N. W. 466,

and *Lambert v. Alcorn,* 144 Ill. 313, 33 N. E. 53, 21 L. R. A. 611, are in harmony with these views.

Some contention is made in appellant's behalf against the sufficiency of respondents' affirmative defense in which they also claim the right to the flow of water from their land through appellant's ditch by prescription. In view of our conclusion as to respondents' rights aside from this defense, we need not notice this contention.

The judgment is affirmed.

MAIN, HOLCOMB, and BAUSMAN, JJ., concur.