[No. 28071. Department One. February 25, 1941.]

JOE ALEXANDER et al., *Respondents,* v. FRANK
MUENSCHER, *Appellant.*[1]

*Loomis Baldrey,* for appellant.

*Bixby & Pemberton,* for respondents.

MAIN, J.—This action was brought seeking an injunction to prevent the defendant from diverting waters from what is alleged to be a watercourse. To the

[1]Reported in 110 P. (2d) 625.

amended complaint, which will be referred to as the complaint, a demurrer was interposed, based upon a number of grounds, one of which was that the plaintiffs had no capacity to sue. After the action had been instituted, a temporary injunction was issued. The trial was to the court without a jury, and, at the conclusion of the evidence and before the argument of counsel, the court, accompanied by the parties to the action and their respective attorneys, went upon the ground to view the watercourse. After argument, the court made findings of fact from which it was concluded that the plaintiffs were entitled to the relief sought. By the decree entered, the defendant was permanently enjoined from diverting the waters which were in issue; and from this decree, the defendant appealed.

The appellant owned a tract of land in Whatcom county. Immediately to the east of this, the respondent Joe Alexander owned another tract, and, east of the Alexander land, two of the other respondents owned land upon which they resided, and one of them occupied land under a lease. According to the evidence offered by the respondents, there was a watercourse starting near the center of the northern boundary of the appellant's land and extending in a southeasterly direction to the dividing line between his land and the Alexander land and passing over onto the Alexander land for a short distance, and then the channel does not extend any farther, but the water forms a swamp to the south. After the water passes through the swamp, it returns to the land of the appellant in a well-defined channel.

About the year 1931, the respondents constructed a ditch, starting at the end of the watercourse upon the Alexander land, which extended east and passed through the land of each of the other respondents.

After extending east some distance, this ditch turned to the south, and then returned to the west or southwest, and by another stream the water was conducted back to the land of the appellant, but some distance to the south of where the channel from the swamp discharged the water upon his land.

Shortly before this action was begun, the appellant constructed a ditch extending south from the watercourse, which crossed his land and passed onto the Alexander land, by which the flow of the water was diverted from the land of the latter. With the exception of the Alexander land, none of the land of the other respondents was riparian to the watercourse.

The appellant's evidence was to the effect that there was no watercourse upon his land, but that the water that passed over onto the Alexander land was surface water. The respondents' evidence was to the effect that there was a well-defined watercourse on the appellant's land which carried the water over onto the Alexander land. Upon this conflicting evidence and after viewing the premises, the trial court made a finding to the effect that there was, and had been, a natural watercourse, being an unnavigable stream

" . . . running from approximately the center of the north boundary of the defendant's [appellant's] property in a southeasterly direction where it crosses the property line of the defendant Muenscher and the plaintiff Alexander; that the said stream of water is fed by springs and has always had a constant flow."

Surface waters are produced by rain, melting snow, or springs. *LeBrun v. Richards,* 210 Cal. 308, 291 Pac. 852, 72 A. L. R. 336; *Nathanson v. Wagner,* 118 N. J. Eq. 390, 179 Atl. 466. Other cases might be cited, but there is no dispute as to what constitutes surface waters. Such waters may be said to form a watercourse at a point where it begins to form a reasonably

well-defined channel, "with bed, banks or sides, and current, although the stream itself may be very small, and the water may not flow continuously; . . . " Gould on Waters (3d ed.), 536, § 263.

After giving attentive consideration to all the evidence in the case, we are of the view that the decree of the trial court should not be disturbed in this respect. The trial court, having heard the evidence and viewed the premises, was in a much better position to determine the issue than are we.

■ The appellant says, however, that the relief of the respondents, if any, should be damages, and that they are not entitled to injunctive relief. In 27 R. C. L. 1133, § 63, it is said:

"It is well settled that a riparian owner whose rights are invaded by a wrongful diversion of the water naturally flowing through or by his premises is entitled to the preventive remedy of injunction, if seasonably invoked."

The case of *Davies v. Seattle*, 67 Wash. 532, 121 Pac. 987, is to the same effect.

■ The fact that the watercourse, after passing over onto the Alexander land, spread out and formed a swamp for a short distance and then converged again into a channel does not deprive it of its character as a natural watercourse. *Rigney v. Tacoma Light & Water Co.*, 9 Wash. 576, 38 Pac. 147, 26 L. R. A. 425.

The fact that the source of the water was, in part, produced by springs, does not prevent it from being a watercourse after it enters into a channel having a bed, banks, and current, even though it may, at times, be dry. In *Hollett v. Davis*, 54 Wash. 326, 103 Pac. 423, it is said that:

"In other words, water flowing in a natural water course which arises from a spring is not different, with respect to the rights of riparian proprietors along

the stream, from water flowing through such a course arising from any other source."

Upon the trial, the appellant offered in evidence a photostatic copy of a plat of survey of certain lands in Whatcom county of which that owned by the parties to this action was a part, and this plat was rejected, of which ruling the appellant complains. The plat was prepared in the surveyor general's office at Olympia July 16, 1873. There was no error in the ruling of the trial court. We see nothing upon the plat that would throw any material light upon the present controversy.

We now come to the question as to whether any of the respondents, with the exception of Alexander, can maintain this action. The Alexander land, as already indicated, was the only tract that was riparian to the stream. A nonriparian owner has no right to divert water from a stream, even though the riparian owner is not himself using it. In 1 Wiel on Water Rights in the Western States (3d ed.), 913, § 861, it is said:

"Should a nonriparian owner divert the water above the riparian owner, the nonriparian owner will be enjoined so far as the water is or may be beneficial to the riparian land, though the riparian owner is not himself using it; and should the nonriparian owner be diverting the water below the riparian owner who is not using it, the nonriparian owner cannot complain when the riparian owner above takes it from him thereafter for his own use upon his own land."

Nonriparian owners have no right to divert water from a watercourse even though they are using it by grant or license from a riparian owner. In Gould on Waters (3d ed.), 443, § 224, it is said:

"The rights of a riparian proprietor with respect to the stream appear not to be affected by rights which non-riparian proprietors may have acquired to use the water by grant or license from other riparian owners."

It thus appears that none of the respondents, with the exception of Alexander, had a right to maintain the action.

The decree appealed from, as to respondents Lloyd Cline, William Scholten, and D. McKay, who owned nonriparian land, will be reversed, and the cause remanded with direction to the superior court to dismiss the action as to them. As to the respondent Joe Alexander, the decree will be affirmed.

ROBINSON, C. J., BLAKE, STEINERT, and DRIVER, JJ., concur.