[No. 11633-9-I.   Division One.   January 9, 1984.]

ISLAND COUNTY, *Respondent,* v. SYLVAN MACKIE, ET AL, *Appellants.*

*Hamersley S. Wright,* for appellants.

*David F. Thiele, Prosecuting Attorney,* and *Alan R. Hancock, Deputy,* for respondent.

DURHAM, C.J.—Sylvan and Pearl Mackie appeal the order awarding damages and granting a permanent injunction to respondent Island County.

The Mackies own several acres of lowland property on Whidbey Island. Humphrey Road, maintained by Island County, abuts their property on the west, and is located within a natural drainway extending from the northwest and across their property. Island County maintains a culvert under Humphrey Road to facilitate the passage of water through the drainway. The outfall of the culvert

deposits surface water onto the Mackie property.

In September 1977, the Mackies sued Island County, a number of county officials, and several upland property owners, seeking damages and injunctive relief for the alleged unlawful diversion of surface waters into the drainway and onto their property, *Mackie v. County of Island,* 28 Wn. App. 1008 (1981) (*Mackie* I). The individual defendants were dismissed from the suit, and the County was awarded summary judgment, which was affirmed by this court in an unpublished opinion. This court found that the culvert and the Mackie property are located in a natural drainway, and that the culvert merely facilitates the natural passage of water through the drainway and under Humphrey Road. It also found that the County, through a system of drainage ditches upland of the Mackie property, had not redirected any additional watershed waters into the drainway and onto the property.

In August 1979, during the pendency of *Mackie* I, the Mackies constructed a dam that diverted the waters flowing across their property into a drainage ditch maintained by the County. The ditch abuts the Mackie property on the north and is located within a separate natural drainway. The Mackies also deepened and widened this ditch to accommodate the increased flow, and deposited the removed soil onto a County road next to the ditch.

On March 27, 1981, the Mackies plugged the culvert under Humphrey Road, causing water to back up and form a pond on the west side of the road, leading to the road's collapse. Island County was forced to replace the culvert in order to effect repairs.

On March 31, 1981, the County filed suit against the Mackies, seeking damages and injunctive relief against further blocking of the culvert, redirection of water out of the drainway into the ditch, widening of the ditch, and dumping any removed material onto the county road. After issuing both a temporary restraining order and preliminary

injunction against these activities,[1] the trial court awarded damages and granted a permanent injunction from which the Mackies now appeal.

### THE COMMON ENEMY RULE

The Mackies first contend that they were entitled to block the culvert pursuant to the common enemy rule. Under this rule, vagrant and diffuse surface waters are regarded as a common enemy against which a landowner may defend himself, regardless of injury to others. *See Cass v. Dicks,* 14 Wash. 75, 78, 44 P. 113 (1896). The common enemy rule does not apply, however, to waters flowing through natural watercourses, such as rivers and lakes. *See Wilber v. Western Properties,* 14 Wn. App. 169, 173–74, 540 P.2d 470 (1975). In the Mackies' view, the waters flowing through the culvert under Humphrey Road were surface waters subject to the common enemy rule.

The trial court ruled that the Mackie property, the upland property and the culvert are all located within a "natural drainway" extending from the northwest across the Mackie property. The court also held that the common enemy rule is inapplicable to *both* natural watercourses and natural drains. A natural drain has been defined as "that course, formed by nature, which waters naturally and normally follow in draining from higher to lower lands." *King Cy. v. Boeing Co.,* 62 Wn.2d 545, 550, 384 P.2d 122 (1963). The Mackies do not challenge this definition nor do they dispute that their property is located in a natural drain. Rather, they argue that natural drains do not fall within the watercourse exception to the common enemy rule. Washington case law does not support this view.

In *Trigg v. Timmerman,* 90 Wash. 678, 156 P. 846 (1916), the Washington Supreme Court held that an upper proprietor was entitled to incidentally increase the flow of surface

---

[1]The trial court also authorized county work crews to enter onto the Mackie property to the extent necessary to effect repairs on the culvert and the Humphrey Road. In response, the Mackies asserted a counterclaim based upon the allegedly unlawful entry upon their property by these work crews.

water into a "swale" that extended through his property and that of a lower proprietor. Although the court acknowledged the principle that an upper proprietor may not artificially concentrate surface water on his land and discharge it upon the land of a lower proprietor, *Trigg*, at 681, it held that rule to be inapplicable "'to natural depressions or drain ways through which the surface water on the higher land drains onto the lower land". *Trigg*, at 681–82, quoting 19 L.R.A. (n.s.) 167 (1907). In so doing, the court held that the swale was a watercourse, "in the sense that there is a natural gravitation of water therein towards the south . . .". *Trigg*, at 682. Thus, although the common enemy rule was not involved, the court equated natural drains and watercourses for purposes of water drainage law.

In *King Cy. v. Boeing Co., supra,* the court squarely held that the common enemy rule does not apply to watercourses or natural drains. The case differs from *Trigg* only in that a natural drain was recognized as a distinct geologic feature, as opposed to a subclass of watercourse. In either case, the common enemy rule does not apply.

The Mackies contend that the inclusion of natural drains in the watercourse exception is inconsistent with pre–*Trigg* case law. They allege that *Trigg* and *Boeing* blurred what had been a clear distinction between watercourses and natural drains for purposes of the common enemy rule. While it is true that early Washington cases did not use the term natural drain, they nonetheless refused to apply the common enemy rule under circumstances substantially equivalent to the instant case. In *Dahlgren v. Chicago, M. & P.S. Ry.,* 85 Wash. 395, 148 P. 567 (1915), plaintiffs brought an action for the alleged wrongful obstruction of a watercourse. Waters gathered to the west of plaintiffs' property "in a natural channel or gully" and then flowed across their property. The defendant railroad constructed an embankment across the gully but failed to provide adequate drainage, causing water to back up on the plaintiffs' land. Affirming the plaintiffs' verdict, the court held that the complaint sufficiently described the flow of water across

their property as a watercourse. In so doing, the court noted that surface waters are

> waters of a casual or vagrant character having a temporary source, and which diffuse themselves over the surface of the ground, following no definite course or defined channel, while here the waters . . . [flow] . . . naturally and without hindrance through a natural water course and channel . . .

*Dahlgren,* at 405. The physical conditions described in *Dahlgren*—a periodic flow through a gully across the plaintiffs' land—appear no different from those on the Mackie property.

Furthermore, early Washington decisions recognized that surface water could become part of a watercourse if it accumulates and begins flowing in a natural channel. For example, in *Miller v. Eastern Ry. & Lumber Co.,* 84 Wash. 31, 146 P. 171 (1915), the court held that although a swamp or swale is not ordinarily a watercourse, it may be a watercourse "[w]here there is a spreading of a stream which still moves by natural gravitation in a certain direction to a common or defined channel . . .". *Miller,* at 34.[2] In contrast, the court defined surface water as

> water on the surface of the ground, the source of which is so temporary or limited as not to be able to maintain for any considerable time a stream or body of water having a well defined and substantial existence."

*Miller,* at 35, quoting 1 C. Kinney, *Irrigation* § 318 (1912). *Accord, Hastie v. Jenkins,* 53 Wash. 21, 101 P. 495 (1909). Thus, it appears that a narrow definition of watercourse was never applied in Washington, as the Mackies contend. *See* Comment, *Toward a Unified Reasonable Use Approach to Water Drainage in Washington,* 59 Wash. L. Rev. 61, 68 n.34 (1983).

■ In any event, Washington cases decided after *Trigg* have consistently held that the common enemy rule does not apply to natural drains. *See Boeing,* at 550–52; *Wilber,*

---

[2]There is no requirement that a watercourse have a continuous flow. *See Alexander v. Muenscher,* 7 Wn.2d 557, 559–60, 110 P.2d 625 (1941).

at 173. Thus, even if it were true that these cases departed from prior authority, the Mackies fail to indicate why this departure was unwarranted as a matter of policy. If the common enemy rule does not apply to watercourses, there is no good reason why the rule should apply to natural drains. As it is undisputed that the culvert and the Mackie property lie within a natural drain, the Mackies were not entitled to block the culvert under the common enemy rule. *See Wilber,* at 173.

### COLLATERAL ESTOPPEL

■ The Mackies next argue that the trial court erred in ruling that they were precluded from relitigating the issues decided in *Mackie* I.[3] They are mistaken. Collateral estoppel prevents the relitigation of an issue or determinative fact after the party estopped has had a full and fair opportunity to present his case. *See Henderson v. Bardahl Int'l Corp.,* 72 Wn.2d 109, 115, 431 P.2d 961 (1967). *Beagles v. Seattle–First Nat'l Bank,* 25 Wn. App. 925, 929, 610 P.2d 962 (1980). The doctrine applies only if the following questions are answered affirmatively:

(1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? (4) Will the application of the doctrine not work an injustice on the party against whom the doctrine is to be applied?

*Lucas v. Velikanje,* 2 Wn. App. 888, 894, 471 P.2d 103 (1970); *accord, Beagles,* at 929. The Mackies do not allege that there was no judgment on the merits, that they were not parties in the prior adjudication, or that collateral estoppel would work an injustice here. Rather, they argue

---

[3] Appellants also contend that the County cannot rely on *Mackie* I for collateral estoppel purposes because unpublished opinions cannot be relied on as precedent. *See State v. Fitzpatrick,* 5 Wn. App. 661, 668, 491 P.2d 262 (1971). The short answer to this argument is that *Mackie* I is not relied on here as a legal precedent, but as evidence that certain facts have been conclusively determined in prior litigation between the same parties.

that *Mackie* I involved a different ultimate issue.

In *Mackie* I, the Mackies sought damages and an injunction to prevent Island County from allowing certain upland property owners from directing water into the natural drain crossing their property. The court granted Island County's motion for summary judgment. The court held that the upland property and the Mackie property were located within a natural drain, and that the waters flowing across the Mackie property followed their natural course. It also found that Island County had actually diverted a significant amount of water *away* from the Mackie property. The court then held that Island County was legally entitled to channel upland surface waters into the drainway, as water was not diverted from its natural flow and was only incidentally increased.

The Mackies do not dispute these findings, but argue that their inability to obtain an injunction against the County does not prevent them from obtaining the same result by blocking the culvert. This argument is meritless. The facts established in *Mackie* I—that the culvert and the Mackie property are located in a natural drain—are themselves sufficient to foreclose reliance on the common enemy rule as discussed above. Thus, it is irrelevant that the Mackies' right to an injunction may have raised a different ultimate issue than is presented here. In any case, the issue in *Mackie* I and the issue here are really opposite sides of the same coin. *Mackie* I conclusively established that Island County has the right to discharge water onto the Mackie property through its drainage system. To hold that the Mackies can achieve by self–help what they couldn't achieve in the courts makes little sense.

The Mackies also urge that the issue here is if the natural drain is a watercourse, and that *Mackie* I only determined if their property was situated in a natural drain. This argument is also meritless, as the common enemy rule applies neither to watercourses nor to natural drains.

## MACKIES' COUNTERCLAIM

The Mackies next raise several arguments that have significance primarily insofar as they relate to their counterclaim, which arose out of the allegedly unlawful entry upon their land by County work crews to repair the culvert and Humphrey Road. Specifically, they allege that there was no public emergency justifying the County's entry onto their property. According to the Mackies, the County could have solved the ponding problem by directing the waters that would have run through the drainway into the drainage ditch on the north side of the Mackie property. In this way, the County could have stopped the flooding without having to enter upon the Mackie property.

█ The Mackies cite no legal authority for the proposition that entry upon private property to make necessary road repairs is justified only by a public emergency. To the contrary, it is firmly established that counties and municipalities have an affirmative duty to maintain safe roadways. *See Stewart v. State*, 92 Wn.2d 285, 295, 597 P.2d 101 (1979); *Simmons v. Cowlitz Cy.*, 12 Wn.2d 84, 88, 120 P.2d 479 (1941). Failure to meet this obligation may subject counties to legal liability. *See Provins v. Bevis*, 70 Wn.2d 131, 138, 422 P.2d 505 (1967). Furthermore, when a county or municipality builds a road across a natural drain, it is legally required to provide an adequate culvert and maintain it in a reasonable condition. *See Colella v. King Cy.*, 72 Wn.2d 386, 390, 433 P.2d 154 (1967); *Ronkosky v. Tacoma*, 71 Wash. 148, 152, 128 P. 2 (1912). It is undisputed that blocking the culvert led to ponding on the west side of Humphrey Road, causing structural instability. Under these circumstances, the County had no choice but to repair the road and replace the culvert. The trial court, therefore, had the authority to authorize work crews to enter upon the Mackie property.[4]

The Mackies' suggestion that the County could have

---

[4]The trial court specifically directed that County personnel take all reasonable steps to limit the extent of their entry.

avoided trespassing upon their property by channeling the blocked water into the county ditch also lacks merit. The trial court found that the ditch running along the north side of the Mackie property was within a separate natural drain. As noted above, although an upland owner may incidentally increase the amount of water in a natural drain, he may not artificially channel water out of the drain and onto another's property. *Wilber Dev. Corp. v. Les Rowland Constr., Inc.*, 83 Wn.2d 871, 875, 523 P.2d 186 (1974). The County sought an injunction against the Mackies' diversion dam precisely because of the possibility that the increased flow would damage other property owners. It would be anomalous to conclude that the County is legally obligated to do exactly that which the Mackies are prohibited from doing.

INJUNCTION AGAINST DIVERSION DAM

Next, the Mackies challenge certain findings of fact that are relevant primarily with respect to the propriety of the injunction against their diversion dam. The Mackies contend that their entire property is within a natural drain, and that the dam had the effect of merely channeling water laterally across the drain. Thus, it was error to find that they had diverted water out of its natural flow.

We conclude, however, that the trial court's findings are supported by substantial evidence. There was testimony to the effect that the diversion dam caused water to stray from its natural flow and into a separate drainway. There was also testimony that the additional water channeled into the drainage ditch would cause it to be overloaded during heavy rains, and that the County incurred additional expenses monitoring the ditch to prevent siltation.

Once an appellate court determines that findings of fact are supported by substantial evidence, the only remaining issue is if the findings support the trial court's legal conclusions. *Rainier Nat'l Bank v. Clausing*, 34 Wn. App. 441, 444, 661 P.2d 1015 (1983). Here, the Mackies challenge certain findings of fact, but raise no legal issues

with respect to those findings in their briefs. It is well settled that assignments of error unsupported by legal argument need not be considered on appeal. *See State v. Fortun,* 94 Wn.2d 754, 756, 626 P.2d 504 (1980); *Mellor v. Chamberlin,* 34 Wn. App. 378, 383, 661 P.2d 996, *review granted,* 100 Wn.2d 1001 (1983); RAP 10.3(a)(5). In any event, the Mackies specifically admitted pursuant to respondent's request for admissions that the natural drain proceeded diagonally across their property. Thus, the trial court properly issued the injunction against the diversion dam.

### POLICY ARGUMENTS

Finally, the Mackies advance two policy arguments. First, they argue that acceptance of the rule that natural drains fall within the watercourse exception to the common enemy doctrine undermines legislation empowering counties to establish floodwater control and storm drainage systems. *See* RCW 36.89, 36.94. Second, they contend that equating natural drains with watercourses for purposes of the common enemy rule might "create a whole new body of law of riparian property rights." They argue, in essence, that the law of riparian rights will be thrown into turmoil if natural drains are treated as watercourses for purposes of riparian rights. Both these arguments are highly speculative and/or misconstrue the relevant statutes. After a thorough review, we conclude that they are without merit.

The judgment of the trial court is affirmed.

WILLIAMS and ANDERSEN, JJ., concur.

Review denied by Supreme Court March 23, 1984.