[No. 41300-7-I.   Division One.   November 9, 1998.]

SNOHOMISH COUNTY, *Plaintiff,* DAVID SMITH, *Appellant,* v. JOHN POSTEMA, ET AL., *Respondents.*

*David Scott Mann*, for appellant.
*Sean Philip Holland*, for respondents.

GROSSE, J. — The trial court's decision to dismiss David Smith's claims for trespass and nuisance against John and Maryke Postema is reversed and this case is remanded for trial. There are material questions of fact relative to the application of "the common enemy doctrine" to this action for damages caused by clearing and draining a wetland.

John and Maryke Postema own a Washington corporation doing business as Flower World in Snohomish County. In 1990, they purchased 8.3 acres in that county from Nancy Harris, which they leased to the corporation.[1] Three county drainage ditches enter the property, two from the upstream side and a third from the west through a culvert under Maple Road. Prior to any activity by the Postemas, water entered the property through defined channels, spread out over wetlands on the property, moved slowly downstream, and eventually drained off the property through a defined watercourse channel into Evans Creek.

---

[1]The Postemas also own another parcel of land (between Flower World and Smith's property) but the clearing, grading, and filling on that property are not at issue here.

During the summer of 1990, John Postema cleared 4.4 acres of the property, filled 1.1 acres of wetland, and built two drainage ditches to drain wetlands through a swale into Evans Creek. Responding to complaints, Snohomish County (County) issued a stop work order, but Postema continued. The County then commenced suit. A county grading inspector filed several declarations regarding the adverse downstream effects due to the change in runoff characteristics of the drainage. The County notified the U.S. Army Corps of Engineers which in turn notified the Postemas that grading and clearing the wetland violated federal law. To avoid a federal violation, Postema responded by removing .2 acres of wetland fill, reducing his fill to less than an acre.

David Smith lives about one-half mile downstream from the subject property and has a trout pond that is fed by Evans Creek. The winter following the clearing and filling, Smith noticed his pond filled with sediment but it did not clear as usual. A civil engineer concluded that it was Postema's activities that caused a significant amount of sediment to erode from the upstream property down through Evans Creek into Smith's pond.

In January 1993, Smith moved to intervene as a plaintiff in the County's action. The Postemas argued that Smith was improperly attempting to turn a regulatory enforcement action into a lawsuit for damages. Further, they claimed that Flower World was responsible for the grading and draining and therefore Flower World, not the Postemas, was responsible. Neither Smith nor the County named Flower World as a defendant. The trial court granted Smith's motion to intervene. Smith's complaint incorporated the County's allegations and sought monetary damages for nuisance and trespass.

In November 1995, Smith moved to amend his complaint to add Flower World as a defendant, but the amendment was denied. In January 1996, the Postemas moved for summary judgment, arguing they were erroneously named as defendants. While this motion was pending, the County

withdrew its complaint. On February 28, 1996, the court entered an order limiting Smith's cause of action to one for trespass for those actions personally performed by John Postema on the Harris property. Smith assigns error to this order.

On April 16, 1996, the Postemas filed a second motion for summary judgment, arguing that they were shielded from liability by the "common enemy rule" or "common enemy doctrine." The trial court agreed and granted summary judgment to the landowners dismissing the case, holding they were shielded from liability by the "common enemy rule."[2]

■ We apply the usual standard of review for cases on summary judgment.[3] The trial court dismissed Smith's action on the Postemas' second attempt at summary judgment solely on the ground that "the direction of the water was not altered and the common enemy doctrine applied." Summary judgment, however, was inappropriate. Smith raised a factual issue as to the nature or classification of the water on the Postemas' land and how the water coursed from there. In other words, there was a question of whether the water was from a "natural watercourse" or was merely "surface waters."[4] That question is to be determined by a trier of fact.[5]

The Postemas rely heavily on the case of *Trigg v. Timmerman*.[6] In *Trigg*, the Supreme Court held that an upper landowner was entitled to incidentally increase the flow of surface water into a swale that extended through his property. The court acknowledged the principle that the upper

---

[2]Smith sought direct review to the Supreme Court, but the case was transferred to this court.

[3]*Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994).

[4]"Surface waters are ordinarily those vagrant or diffused waters produced by rain, melting snow, or springs." *King County v. Boeing Co.*, 62 Wn.2d 545, 550, 384 P.2d 122 (1963).

[5]*Buxel v. King County*, 60 Wn.2d 404, 408, 374 P.2d 250 (1962) (citing *Tierney v. Yakima County*, 136 Wash. 481, 239 P. 248 (1925)).

[6]*Trigg v. Timmerman*, 90 Wash. 678, 156 P. 846 (1916).

landowner could not artificially increase surface water on his land and discharge it on the land of the lower landowner, but it held that the rule or principle was "inapplicable" to natural depressions or drain ways through which the surface water drains onto the lower land.[7] In doing this, the *Trigg* court held that the swale in that case was a watercourse, "in the sense that there is a natural gravitation of water therein towards the south . . . ."[8] "Thus, although the common enemy rule was not involved [in *Trigg*], the court equated natural drains and watercourses for purposes of water drainage law."[9] Washington cases decided after *Trigg* have consistently held that the common enemy rule does not apply to natural drains or watercourses.[10] Additionally, the law imposes liability for the artificial collection and discharge of diffuse surface waters on adjoining land in quantities greater than, or in a manner different from, the natural flow.[11]

■ In the instant case, the Postemas claim the water is surface water. Smith, and his expert, claim the water was a natural watercourse.[12] If the water comes from a natural watercourse or through a "natural drain," the common enemy rule does not apply.[13] The Postemas argue that even if the water were not surface water, they still have no liability because they only directed it through the natural watercourse. This argument is incorrect under case law more recent than *Trigg*. Only if the waters are determined

---

[7]*Trigg*, 90 Wash. at 681-82 (citation omitted).

[8]*Trigg*, 90 Wash. at 682.

[9]*Island County v. Mackie*, 36 Wn. App. 385, 389, 675 P.2d 607 (1984).

[10]*Mackie*, 36 Wn. App. at 390-91.

[11]*DiBlasi v. City of Seattle*, 85 Wn. App. 514, 519, 933 P.2d 443 (citing *Wilber Dev. Corp. v. Les Rowland Constr., Inc.*, 83 Wn.2d 871, 874, 523 P.2d 186 (1974)), *review granted*, 133 Wn.2d 1002 (1997).

[12]The fact that a water course spreads out and forms a swamp does not deprive it of its character as a "natural water course." *Alexander v. Muenscher*, 7 Wn.2d 557, 110 P.2d 625 (1941); *Rigney v. Tacoma Light & Water Co.*, 9 Wash. 576, 38 P. 147 (1894).

[13]*Mackie*, 36 Wn. App. at 389 (citing *King County v. Boeing Co.*, 62 Wn.2d at 550).

to be "surface waters" are the Postemas entitled to seek the shield of the common enemy doctrine. The determination of what classification of water is involved is a question for the trier of fact and should not be taken from "the jury."[14] There are disputed issues of material fact, and summary judgment should not have been granted.

Alternatively, even if the Postemas are correct, that these waters are merely surface waters, there also exists a question of material fact as to whether the Postemas' upstream actions caused a greater discharge of the water, or discharge in a different manner from its natural flow.[15] In determining whether a landowner may be shielded from liability, the common enemy rule is carefully balanced to limit "the burden of the downhill landowner to approximately that created by the forces of nature."[16] Even surface waters may not be artificially collected and discharged upon adjoining lands in greater quantity or in a different manner than that which would normally occur.[17] Although a question for the trier of fact, there appears to be an abundance of evidence that the Postemas trespassed on Smith's property by discharging a quantity of water from their property which was filled with sediment and silt.[18] The downstream pond became noticeably smaller when surveyed from the air. The pond was once six to seven

---

[14]*Tierney*, 136 Wash. at 484.

[15]*Hedlund v. White*, 67 Wn. App. 409, 418, 836 P.2d 250 (1992) (citing *Holloway v. Geck*, 92 Wash. 153, 157, 158 P. 989 (1916) (which quoted *Peters v. Lewis*, 28 Wash. 366, 68 P. 869 (1902) ("[W]hen surface water is collected and discharged upon adjoining lands in quantities greater than, or in a manner different from, the natural flow, a liability accrues for the injury occasioned thereby.")); *see also, Harkoff v. Whatcom County*, 40 Wn.2d 147, 154, 241 P.2d 932 (1952).

[16]*Hedlund*, 67 Wn. App. at 416 (footnote omitted).

[17]*King County v. Boeing Co.*, 62 Wn.2d at 550-51.

[18]"A trespass is an intrusion onto the property of another that interferes with the other's right to exclusive possession. *Bradley v. American Smelting & Ref. Co.*, 104 Wn.2d 677, 690-91, 709 P.2d 782 (1985) (quoting *Borland v. Sanders Lead Co.*, 369 So. 2d 523, 529 (Ala. 1979)). The concept includes 'trespass by water'. *Buxel v. King Cy.*, 60 Wn.2d 404, 409, 374 P.2d 250 (1962)." *Hedlund*, 67 Wn. App. at 418 n.12.

feet deep, yet after Postema's grading it was only three feet deep. Summary judgment was inappropriate.

The Postemas claim that all Smith's claims were properly dismissed because Smith failed to serve a summons. We disagree. This claim was specifically withdrawn or waived by the Postemas below.[19] The Postemas also claim that Smith failed to establish all the elements of a prima facie case of trespass. Because this theory was not argued before the trial court, nor was it the basis of the trial court's ruling, it need not be discussed here.

In light of our decision, although not dispositive, Smith's additional issue warrants discussion. Smith claims the trial court erred in limiting his claims to damages caused only by the Postemas' personal actions. We agree. There is no question that John Postema and his wife are the owners of the land on which activities happened that allegedly created the problem at issue. There is no question that the Postemas wholly own and operate the corporation on the land, that the business is managed by them, and that the activities happened through their direction and efforts. They have conceded service of process. Their claim is that if there is any culprit here it is Flower World and the fact that Smith did not sue Flower World is somehow fatal to his case. This is incorrect. Smith had the option to sue the Postemas, Flower World, or both.[20] Given the facts, Flower World is not a necessary party, much less an indispensable party.

There is no doubt that if the allegations are proved the Postemas may be personally liable.[21] In addition, in limiting Smith's cause of action to those personal acts, the trial court failed to look at the facts and consider them in the light most beneficial to Smith. The Postemas wholly own

---

[19]See Defs.' Reply Mem. in Support of Mot. for Summ. J. at 1 (Feb. 12, 1996).

[20]See Orwick v. Fox, 65 Wn. App. 71, 80-81, 828 P.2d 12 (1992).

[21]See Betchard-Clayton, Inc. v. King, 41 Wn. App. 887, 893, 707 P.2d 1361 (1985) (citing Johnson v. Harrigan-Peach Dev. Co., 79 Wn.2d 745, 754, 489 P.2d 923 (1971)).

the corporation. John Postema managed the corporation and personally directed and did work for his benefit and that of his marital community and the corporation. At trial, Smith must have the opportunity to argue facts to demonstrate John Postema's liability for his personal acts, for his actions as president and general manager of Flower World, and for the acts of employees or contractors under his supervision and direct control.

The decision of the trial court is reversed and the case remanded for trial.

BAKER and ELLINGTON, JJ., concur.

Review denied at 139 Wn.2d 1011 (1999).